# FLORENCE BROWN v. ST. PAUL CITY RAILWAY COMPANY.[1]

January 15, 1954.

No. 36,019.

[1]Reported in 62 N. W. (2d) 688.

16

*Ray G. Moonan* and *Frank X. Cronan,* for appellant.

*Sullivan, Stringer, Donnelly & Sharood* and *David R. Roberts,* for respondent.

*Benjamin J. Blacik* and *Hunt, Palmer, Hood & Crassweller, amici curiae.*

KNUTSON, JUSTICE.

Appeal from an order denying defendant's alternative motion for judgment notwithstanding a verdict for plaintiff or for a new trial.

For an understanding of the decisive questions involved in this appeal the facts may be briefly stated. On May 16, 1950, at approximately 3:45 p. m., plaintiff left the office at which she worked at 244 Dayton avenue in St. Paul and walked about three blocks to where she intended to board a westbound Selby Lake streetcar at a point where it emerges from a tunnel. It had been raining during the day but had stopped raining when she left her office. The street was somewhat wet but not particularly slippery. Plaintiff's version of what occurred and that of the conductor of the streetcar are completely at variance.

Plaintiff contends that she stood on the sidewalk and waited for the car and that, when she heard it coming through the tunnel, she stepped out into the street to board it. She testified that there was no one else waiting for the car but that she did see another woman running to catch the car from the front end; that the car stopped and opened the gates; that she put her right foot on the lower step and grasped the brass rail on the inside of the car; and that, just as she lifted her left foot, the gates of the car closed upon her. She said that there were then some men on the back of the car; that they yelled and the conductor turned around and saw her and the doors then opened; and that she fell out onto the street and received the injuries for which she sues to recover.

The conductor on the other hand testified that the streetcar had stopped to discharge passengers but that no one was waiting to

board the car; that after the doors had been closed he observed plaintiff running at an angle from the sidewalk; that he then signaled the motorman to open the doors and they did reopen; and that plaintiff fell in the street midway between the sidewalk and the car, before she reached the streetcar.

It is undisputed that plaintiff was helped into a nearby grocery store by the conductor and another individual and an ambulance was called. She was taken to St. Joseph's Hospital.

No other witnesses were called by either party to testify concerning the manner in which plaintiff sustained her injuries although it is conceded that several persons were aboard the streetcar.

It is conceded by plaintiff that, if the accident had happened as related by the conductor, plaintiff could not prevail.

The question of defendant's negligence was properly submitted to the jury. We need consider only two questions on this appeal: (1) Was improper use made of plaintiff's exhibit A, consisting of a hospital chart or record? (2) Did the court err in permitting plaintiff to inspect a report of defendant's conductor prior to the trial?

Plaintiff called as her witness Dr. Joseph M. Ryan, one of her attending physicians. During his examination plaintiff offered exhibit A, a hospital record consisting of several pages. Counsel for defendant at that time stated:

"As far as I know there will be no objection to Plaintiff's Exhibit A. I would like to examine it as you go along."

The exhibit was thereupon received by the court. In order to understand the relative contentions of the parties on this appeal it is necessary, even at the risk of unduly extending this opinion, to set forth what transpired thereafter between court and counsel respecting exhibit A and the attempted use of it.

Dr. Ryan was called on the case by telephone the evening plaintiff was brought to the hospital, but he did not actually see her in the hospital until the next morning. Part of exhibit A was prepared by Dr. Ryan or under his supervision and part of it by other doctors

18

and by nurses. Dr. Ryan was interrogated respecting exhibit A, and the following then transpired:

"Q. Now what other history did she give you with reference to her condition, Doctor?

"A. Shall I read this?

"Q. Yes. If you remember it give it. If you can't read it.

"A. I will have to read it. The chief complaint was back pain and weakness. Then under pre-illness I stated while boarding the streetcar on the 16th of May, 1950, patient was thrown from the step when the door was closed suddenly in her face. She was thrown to the street and rolled to the curb. She was brought to this hospital after she was picked up and placed in the store."

The portion of the exhibit from which Dr. Ryan was reading was that which appears on its face to have been prepared on May 16, 1950, but obviously could not have been prepared until the next morning for he was not on the case until that time. Mr. Moonan thereupon stated:

"Just a moment. For the record, at this time I *move to strike the answer of the doctor* upon the ground that it is hearsay having nothing to do with the doctor's treatment of the patient, hearsay as to the defendant.

\*  \*  \*  \*  \*

"So I may make my position in the record clear, I have no objection to any history the doctor has taken with reference to her physical condition but *any statement made to the doctor* in the nature of a history pertaining to how this accident occurred I object to as hearsay, and move that it be stricken." (Italics supplied.)

Thereafter, Mr. Donnelly attempted to further lay a foundation by showing that it is necessary to have information regarding the manner in which an injury occurred in order properly to diagnose the case; the court sustained the objection; and Mr. Donnelly took an exception.

Thereafter, Dr. Donovan McCain, an orthopedic specialist, was called as a witness, and counsel for plaintiff attempted to lay a

further foundation for the exhibit by showing.that it was necessary to know how the patient fell in order properly to diagnose the case. The following then transpired:

"Mr. Donnelly: Now *we will renew the offer of the portion of the exhibit* Dr. Ryan read from with reference to his examination and the history he took that *I understand as previously been stricken."* (Italics supplied.)

The court then said:

"May I ask a question first? Was this hospital record accepted with qualifications? Did you offer that hospital record in evidence?

"Mr. Donnelly: I offered it in evidence and it was admitted in evidence with the right of counsel—

"The Court: Did you have any stipulation between you?

"Mr. Moonan: No agreement between us.

"The Court: —as to reserving the right to object to hearsay or improper conclusions?

"Mr. Moonan: I reserved the right to examine it with respect to hearsay. I had no objection to the hospital chart insofar as it relates to the care and treatment of Miss Brown in the hospital, but I certainly do object to the hospital chart insofar as it attempts to by hearsay channels inject a statement made by the plaintiff at the hospital where it is attempting to use that statement for any other purpose other than treatment. It is my position, if the Court please, that the statement if as the evidence indicates was taken by the doctor for his own benefit and his own information and treatment it has served its purpose, and that any attempt to offer that in evidence here is purely hearsay. It was not taken for that purpose.

"Mr. Donnelly: If the Court please, this is a part of the history taken by the attending physician and testified to by him and taken, as both doctors have described, as a necessary element of the history and diagnosing of the patient. It is not the hospital record we are talking about now because Dr. Ryan testified by it as his record.

"The Court: Well, what I want to get straight first is when you offered Exhibit—

"Mr. Donnelly: A.

"The Court: Was 'A' the hospital record and B—

"Mr. Donnelly: That is right, Your Honor. B, C, and D are the X-rays.

"The Court: I didn't understand there was any qualification. If I had understood it I would have ruled. If there had been any objection to it I would have ruled. Now if there is any mistake about it I suppose we can settle it.

"Mr. Moonan: Well, I would like to correct any misimpressions or mistakes.

"The Court: All I said was do you want an opportunity to examine it. You didn't object to anything that was in it.

"Mr. Moonan: Well, I had not had an opportunity to examine it, if the Court please, and my purpose was not to slow up the examination of counsel in his examination of his doctor, but I didn't think it was intended to use the hospital chart for any other purpose than the medical phase of this case and in view of the present situation of the record at this time *the defendant will object to Plaintiff's Exhibit A* only insofar as it relates to an attempt to put in evidence in this case of a self serving, hearsay statement made by the plaintiff to her doctors, and particularly the statements which counsel is now referring to in his questioning upon the grounds that it is hearsay and self serving. The defendant objects upon the further grounds that the only purpose as indicated by the testimony here why the statement was taken by the doctor was to serve his own purpose in diagnosis and treatment and that the plaintiff or counsel is now attempting to use the same as evidentiary facts pertaining to the way and manner in which this accident occurred and the liability questions involved in the case. Hence *I object to Plaintiff's Exhibit A* insofar as it is an attempt to use it for that purpose.

\*   \*   \*   \*   \*

"The Court: As I understand it, the hospital record isn't admissible as such. If a proper foundation is laid it may be introduced to show the name of the patient, when the patient got in the hospital,

and when the patient got out of the hospital, the patient's age and nature of the injury, etc., but if it expresses opinions or is hearsay or is improper conclusions or writing of a nurse and not the doctor, or statements of how an accident happened or condition of the patient upon arrival, these things are not admissible and even if they are in the hospital record, and therefore I am going to rule or rather *I am going to sustain the objection to the original question asked.*" (Italics supplied.)

Attached as a part of exhibit A is a page apparently prepared by Dr. M. Adcock, who was not called as a witness for either party. Apparently this paper was prepared on May 16 when Miss Brown was admitted to the hospital. Under the heading of history and physical findings there appears from this part of the exhibit:

"Approx 3:45 P M 5/16/50 pt entering rear door of Selby-Lake streetcar when door closed throwing her to ground on to left side. Was carried to near store."

Plaintiff now contends that, even if the part of the exhibit prepared by Dr. Ryan was eliminated, that part which was prepared by Dr. Adcock was still in evidence without objection. We cannot so read the record. While it might have been better had the court said that he would strike the objectionable part of the exhibit instead of sustaining defendant's objection, it seems clear to us that what the court in effect did was to strike from exhibit A all of the part which related the manner in which the injury occurred. We do not see how there could be any misunderstanding as to what the court intended to do. In spite of this, in his argument to the jury plaintiff's counsel said:

"* * * And it is that kind of evidence that they have here all the way down the line that they expect you to accept rather than to accept the straight forward story that this lady has given, that she has given since the very day this accident occurred and every time she has been questioned and that is indicated by the hospital records here which are in evidence. You can take this to your jury room, *the hospital record,* and examine it and you will notice that

there is in this hospital record a statement at the receiving room taken by an M. Adcock, a Dr. Adcock, on the 16th of May, 1950, at the time that this lady was suffering the type of pain that has been described from this fractured back, and what did she then say? Approximately 3 :45 p. m., patient entered rear door of Selby Lake Streetcar when door closed throwing her to the ground and to the left side. Was carried to near store. Has pain in back. That is what she said the day of the accident. Now do you think that in the interim when she is suffering this excruciating pain in her back that she concocted that story out of her mind or do you think that is the truth and that is exactly what happened on that day a short time before it occurred? That is what the hospital record shows she told them before she talked with anybody." (Italics supplied.)

Counsel then went on to discuss what the complaint stated and what she had stated therein, and he then again said:

"* * * Now is that any different than she says today? Is that any different than she told the hospital authorities when she was received in the receiving room?"

At the close of counsel's argument, Mr. Moonan stated to the court:

"At this time, if the Court please, at the close of plaintiff's argument and before the charge, the defendant takes exception to counsel reading from the hospital chart the statement made by the plaintiff with reference to how this accident happened and requests the Court to instruct the jury to disregard such reading."

The court did nothing but deny the request. Even if we were to admit that the court had stricken only that part of the exhibit prepared by Dr. Ryan, the argument was improper for the reason that it is not limited to the part prepared by Dr. Adcock. As far as the record discloses, the whole exhibit went to the jury. However, we are of the opinion that the record shows that the court intended to and did exclude all that part of exhibit A relating to the manner in which the injury occurred. The exhibit having been excluded, it was not proper to refer to it in the closing argument. Had the court admonished the jury to disregard the argument, the harm might

possibly have been mitigated. The outcome of the case depended almost entirely on whether the jury was to believe plaintiff or defendant's conductor. Where the evidence is so closely balanced, it might well be that the improper use of the excluded portion of the hospital record was sufficient to tip the scales in favor of plaintiff. For that reason there must be a new trial. Whether such use was intentional or due to a misunderstanding, the prejudice would be the same.

Plaintiff now contends that in any event the entire hospital record was admissible under our uniform business records as evidence act (M. S. A. 600.01, 600.02).[2]

■ There is a conflict in the authorities as to whether hospital records or charts are admissible at all.[3] We are committed to the doctrine that such records are admissible, if properly identified and when a proper foundation has been laid, to prove those matters which are not privileged and relate to the hospitalization and treatment of the patient. Even before the adoption of our uniform business records as evidence act we admitted hospital records and charts for some purposes. Manning v. Chicago G. W. R. Co. 135 Minn. 229, 160 N. W. 787; Lund v. Olson, 182 Minn. 204, 234 N. W. 310, 75 A. L. R. 371; Schmidt v. Riemenschneider, 196 Minn. 612, 265 N. W. 816. In the last case, we cite with approval Adler v. New York L. Ins. Co. (8 Cir.) 33 F. (2d) 827.

The case now before us presents a question quite aside from the admissibility of hospital charts and records as such. Stated simply,

---

[2]600.01. "The term 'business' shall include every kind of business, profession, occupation, calling or operation of institutions, whether carried on for profit or not."

600.02. "A record of an act, condition, or event shall, in so far as relevant, be competent evidence if the custodian or other qualified witness testifies to its identity and the mode of its preparation, and if it was made in the regular course of business, at or near the time of the act, condition, or event, and if, in the opinion of the court, the sources of information, method, and time of preparation were such as to justify its admission."

[3]See, Annotations, 75 A. L. R. 378, 120 A. L. R. 1124, 144 A. L. R. 731; 26 Am. Jur., Hospitals and Asylums, § 6.

it is this: Conceding that hospital records and charts are admissible to prove those matters which relate to the hospitalization, treatment, diagnosis, and care of the patient, are hearsay and self-serving statements concerning the manner in which a patient sustained an injury admissible in an action commenced to recover damages for such injury when they are contained in the hospital records? Under our decisions, statements by an injured person as to the cause of the injury and the circumstances attending the accident, made to a physician so long thereafter as not to be part of the *res gestae,* are inadmissible. Firkins v. Chicago G. W. Ry. Co. 61 Minn. 31, 63 N. W. 172; Weber v. St. Paul City Ry. Co. 67 Minn. 155, 69 N. W. 716, 1 Am. Neg. Rep. 97; Strommen v. Prudential Ins. Co. 187 Minn. 381, 245 N. W. 632; Bliss v. Swift & Co. 189 Minn. 210, 248 N. W. 754; see, also, Meaney v. United States (2 Cir.) 112 F. (2d) 538, 130 A. L. R. 973; Annotations, 67 A. L. R. 25, 80 A. L. R. 1529, 130 A. L. R. 983. Does the inclusion of such statements in a hospital record render them admissible as evidence when otherwise they would be inadmissible? We think not.

In re Estate of Lust, 186 Minn. 405, 243 N. W. 443, involved the question whether claimant was the common-law wife of decedent. We held that hospital charts containing a statement that decedent was a single man were inadmissible, saying (186 Minn. 411, 243 N. W. 446):

"* * * In these charts and records decedent was described as a single man. The information for such statements was given by him. It is not shown that claimant knew of or had anything to do with the making of these charts or records. These documents, as well as the statements made by the decedent to the hospital attendants in connection therewith, we think were hearsay, self-serving, and inadmissible."

In the more recent case of Flemming v. Thorson, 231 Minn. 343, 43 N. W. (2d) 225, we had occasion to consider a more extreme application of the rule. In that case the hospital record contained a statement "HOLD FOR POLICE." We held that it was inadmissible, saying (231 Minn. 348, 43 N. W. [2d] 228):

"* * * one of the requisites of admissibility is that the subject of the entry must be within the scope or course of hospital business."

While there is contra authority,[4] a majority of the courts which have passed upon this question have come to the same conclusion. It was so held in New York L. Ins. Co. v. Taylor, 79 App. D. C. 66, 147 F. (2d) 297. In Commonwealth v. Harris, 351 Pa. 325, 41 A. (2d) 688, the court said that the record must be "pathologically germane" to the condition of the patient. In Borucki v. MacKenzie Brothers Co. Inc. 125 Conn. 92, 102, 3 A. (2d) 224, 228, after the court had examined many cases on the subject, it was stated that several of the cases—

"evince a construction of the statute * * * limiting admissibility to entries which record details of diagnosis, treatment and condition of the patient and other facts helpful to an understanding of the medical or surgical aspects of the case, but not including events or narrations, such as those pertaining to the occasion of the patient's resort to the hospital, having no reference to his treatment or medical or surgical history in the hospital."

And in Sadjak v. Parker-Wolverine Co. 281 Mich. 84, 87, 274 N. W. 719, 720, where the hospital record stated among other things that the decedent had fallen from a ladder, which was held to be inadmissible, the court said:

"* * * What decedent told the hospital authorities did not refer to any act, transaction, occurrence, or event in the hospital treatment. The portion of the record thus objected to was pure hearsay and of no evidentiary force and inadmissible."

In addition to the above, see Valenti v. Mayer, 301 Mich. 551, 4 N. W. (2d) 5; Gile v. Hudnutt, 279 Mich. 358, 272 N. W. 706; Harrison v. Lorenz, 303 Mich. 382, 6 N. W. (2d) 554; Petterson v. Lake, 136 Ohio. St. 481, 26 N. E. (2d) 763; Inangelo v. Petterson, 236 Mass. 439, 128 N. E. 713 (inadmissible under different statute);

[4]See, *e.g.*, Watts v. Delaware Coach Co. 44 Del. 283, 58 A. (2d) 689; Cerniglia v. City of New York, 182 Misc. 441, 49 N. Y. S. (2d) 447.

Annotation, 144 A. L. R. 731; 32 C. J. S., Evidence, § 728; 24 Minn. L. Rev. 958, 961.

The purpose of the uniform business records as evidence act was to make it unnecessary to call as witnesses the parties who made the entries. New York L. Ins. Co. v. Taylor, 79 App. D. C. 66, 147 F. (2d) 297, *supra;* Borucki v. MacKenzie Brothers Co. Inc. 125 Conn. 92, 3 A. (2d) 224, *supra.* It was never intended to make that proof which is not proof. Kelly v. Ford Motor Co. 280 Mich. 378, 273 N. W. 737; McGowan v. City of Los Angeles, 100 Cal. App. (2d) 386, 392, 223 P. (2d) 862, 866, 21 A. L. R. (2d) 1206, where the California court said:

"* * * It [a statute similar to M. S. A. 600.02] does not make the record admissible when oral testimony of the same facts would be inadmissible."

Plaintiff contends that it is important that a physician know how an injury occurred in order to properly diagnose the case, and she attempted to lay a foundation for the admission of the statement by having the doctor so state. It may well be that a doctor might desire to know many things, but that fact alone does not make statements which are otherwise inadmissible admissible by the simple expedient of including them in hospital records. We see no reason why such inadmissible statements may not be eliminated from the hospital records and the admissible portion permitted to go to the jury.

We believe the better rule is that under M. S. A. c. 600 hospital records and charts, properly identified, are admissible when not privileged[5] to prove diagnosis, treatment, or medical history of the patient pertinent to the medical and surgical aspects of the case but that hearsay and self-serving statements contained therein are not admissible to prove how an injury occurred, at least when offered by the patient. Whether they are admissible for impeachment

[5]As to whether hospital records are admissible over the patient's objection that they are privileged, see Price v. Standard L. & A. Ins. Co. 90 Minn. 264, 95 N. W. 1118; 12 Minn. L. Rev. 395; Annotations, 75 A. L. R. 393 and 120 A. L. R. 1140; 8 Wigmore, Evidence (3 ed.) § 2382(c).

purposes or for some other purpose not here involved we need not now determine.

Plaintiff also contends that the records should be admissible for the reason, as stated in her brief, that—

"* * * M. S. A. Sec. 600.02 specifically contains a time element that the record was made 'at or near the time of the act, condition or event' as a factor adding to competency. This is consistent with the *res gestae* rule. Here plaintiff made her statements within a short time after the accident on admission to the hospital. These statements have added credibility for that reason."

The very reason that precludes their admission as part of the *res gestae* also precludes their admission on any other ground. They are not part of the *res gestae* because plaintiff has had time to fabricate a story which may be untrustworthy. That leaves them in the realm of hearsay, and they are nonetheless hearsay because little time has elapsed between the injury and the making of the statement. Furthermore, it does not appear from the record when the statement was made to Dr. Adcock. He was not called as a witness, and, as a matter of fact, it does not appear that the statement was made to him by plaintiff at all. He may have gained the information from some outside party as far as the record is concerned. Clearly, they are not part of the *res gestae,* and the fact that they were made soon after the accident does not make them any more admissible.

■ Prior to trial plaintiff moved the court for an order under Rule 34 of our Rules of Civil Procedure requiring defendant to produce and permit plaintiff to inspect and copy the following documents: (1) A report to defendant of the accident made and signed by Carl W. Hoecke, the conductor upon the streetcar involved, and furnished to defendant in the usual course of its business as required under its rules; and (2) the statement taken from Carl W. Hoecke by the claim investigator of the St. Paul City Railway Company after receiving from the conductor the report of the accident.

The motion was supported by an affidavit of plaintiff's attorney stating:

"* * * Carl W. Hoecke was the conductor of said streetcar and, in the usual course and scope of his employment as required by his employer, the defendant St. Paul City Railway Company, completed a report from [sic] covering the matters relevant to the happening of the accident in which plaintiff sustained her injury, and delivered said report to his station foreman at the carbarns where he completed his work on that day as is required by the rules and regulations of the Company, and it is the belief of this affiant that said report contains matter contradictory to the statements made by said Carl W. Hoecke on the 6th day of February, 1952, at the office of his employer, the St. Paul City Railway Company, at which time said Carl W. Hoecke was examined by this affiant as to his knowledge concerning the plaintiff's accident and injury."

The court granted the motion to permit inspection of the first statement mentioned above and denied the motion as to the second statement. Attached to the order of the court is its memorandum stating the reasons for the decision.[6]

Defendant thereupon complied with the court's order and produced the report requested by the motion. It now assigns as error the court's ruling in requiring it to do so.

No counteraffidavits were submitted, nor does the record show what, if any, objections were interposed to the motion. The court's order does show that defendant's counsel was present at the hearing on the motion. It appears that at the trial defendant objected to any further use or inspection of the report—

[6]"It seems clear to me that the intention of the Supreme Court and its Commission on Revision of the Rules was to deny permission under any circumstances for an adverse party to inspect material collected by the adverse party under the general supervision of an attorney or claim agent, but that it was not intended, and its language does not permit the inference, that it was intended, to extend any privilege to reports made in the usual course of business, and not under the supervision of either attorney or claim agent. The distinction is clearly set forth by the Supreme Court in Schmidt vs. Emery, 211 Minn. 547 at page 553."

"upon the ground and for the same reasons an objection was made at the time the matter was submitted to Judge Stewart on a motion to inspect, and I desire at this time to preserve such objections and do object to any inspection of the conductor's report upon the grounds and for the reason that the same is privileged and being a report made of this accident in anticipation of the present law suit to the company and in the files of the attorneys defendants, attorneys for the company, upon the ground and for the reasons that the same is privileged and that plaintiff has no right to search our files or to inspect such report."

From this statement it might appear that objections made to the motion were based both upon the claim that the report was privileged and therefore protected from discovery under Rule 34, and also upon the claim that it was a statement taken in anticipation of or preparation for the trial and therefore was immune from discovery under Rule 26.02. We will assume for the purpose of this decision that objection was made on both grounds.

After the original oral argument in this court we ordered a reargument on our own motion on the questions involving our new rules. New briefs were submitted on these questions and other briefs *amici curiae* have now been submitted, all of which have been very helpful to us in arriving at a solution of the problem involved.

At the outset we are confronted by certain procedural problems that are somewhat troublesome. As a first hurdle we must determine whether the matter is reviewable at all on this appeal. That the order itself is not appealable is now settled. In re Trusteeship Under Will of Melgaard, 187 Minn. 632, 246 N. W. 478. That it may not be reviewed by certiorari is equally settled. Asplund v. Brown, 203 Minn. 571, 282 N. W. 473.

■ It is generally held in federal practice that orders either allowing or refusing to allow discovery are not appealable under 28 USCA, §§ 1291, 1292, because they are interlocutory and not final. Apex Hosiery Co. v. Leader (3 Cir.) 102 F. (2d) 702; O'Malley v. Chrysler Corp. (7 Cir.) 160 F. (2d) 35; Zalatuka v. Metropolitan L. Ins. Co. (7 Cir.) 108 F. (2d) 405; National Nut

Co. v. Kelling Nut Co. (7 Cir.) 134 F. (2d) 532; R. D. Goldberg Theatre Corp. v. Tri-States Theatre Corp. (D. Neb.) 119 F. Supp. 521. There have been four cases in the federal system allowing appeals of discovery orders. Safeway Stores, Inc. v. Reynolds, 85 App. D. C. 194, 176 F. (2d) 476; Martin v. Capital Transit Co. 83 App. D. C. 239, 170 F. (2d) 811; Niagara Duplicator Co. Inc. v. Shackleford, 82 App. D. C. 45, 160 F. (2d) 25; Beach v. Beach, 72 App. D. C. 318, 114 F. (2d) 479, 131 A. L. R. 804. These cases seem to have been brought under special circumstances and seem to be the exception rather than the rule. The Reynolds and Martin cases had to do with discovery of reports made after an accident, which was a troublesome problem that the court wanted to settle, thus accounting for the special appeal.

Normally under the federal practice, discovery orders are reviewable only on an appeal from a final judgment. Apex Hosiery Co. v. Leader, *supra;* Fenton v. Walling (9 Cir.) 139 F. (2d) 608; 2 Barron & Holtzoff, Federal Practice and Procedure, § 803; 3 *Id.* § 1552.

Our cases are in a state of confusion as to whether an order made prior to trial is reviewable on an appeal from an order denying a new trial. 1 Dunnell, Dig. (3 ed.) § 395. Dicta in the case of In re Trusteeship Under Will of Melgaard, 187 Minn. 632, 246 N. W. 478, would indicate that they are so reviewable. However, in Zywiec v. City of South St. Paul, 234 Minn. 18, 47 N. W. (2d) 465, we held that an appeal from an order brings up for review only the regularity of those things which were involved in the order and does not bring up for review intermediate orders made prior to trial. That has been the rule generally followed in this state. The question now before us is whether pre-trial orders under our new rules of civil procedure should be reviewable on appeal from an order denying a new trial. We believe that we should adhere to the rule generally followed heretofore that such orders are reviewable only on appeal from a final judgment. See, Shema v. Thorpe Bros. 238 Minn. 470, 57 N. W. (2d) 157.

It might be well to note here that little could be accomplished by granting a new trial for erroneously compelling a party to disclose privileged communications in a discovery procedure. Once the confidential information in the document is divulged by permitting an adversary to inspect, there is nothing we could do to erase from the minds of the adversary the information so obtained. In that regard it must be kept in mind that there is a difference between erroneously compelling disclosure of privileged documents or other information not subject to discovery and erroneously denying permission to inspect documents claimed to be privileged which are in fact not privileged. See, 8 Wigmore, Evidence (3 ed.) § 2196(2) (*a*) and (*b*). In Neff v. Pennsylvania R. Co. (3 Cir.) 173 F. (2d) 931, the court indicated that, once the privileged matter is produced after objection has been overruled, the question of correctness of the ruling is moot on appeal. On the other hand, if a litigant is denied access to documents or other information which it is claimed is privileged and which ultimately is held not to be privileged, such information may become available on a new trial and the harm thereby obviated. In the former case a new trial would accomplish nothing. With this background in mind, we consider what a litigant may do to protect himself from an order requiring him to produce documents or information which he claims is privileged. As the decisions now stand, probably the only effective remedy prior to trial, unless the action is determined under Rule 37.02, is to refuse to comply with the court's order, permit himself to be declared in contempt, let judgment be entered against him in the contempt proceeding, and then appeal from such judgment. This procedure seems to be the required one under the federal rules. Hickman v. Taylor (3 Cir.) 153 F. (2d) 212, affirmed, 329 U. S. 495, 67 S. Ct. 385, 91 L. ed. 451; Neff v. Pennsylvania R. Co. *supra* (holding that when defendant answers interrogatories after his objection has been overruled the question is moot on appeal).

It seems extremely harsh to require a litigant to subject himself to a contempt proceeding before a matter of this kind may be

reviewed effectively. State ex rel. Thompson v. Harris, 355 Mo. 176, 195 S. W. (2d) 645, 166 A. L. R. 1425, illustrates an interesting possibility. In that case, under a statute somewhat similar to our rules, the plaintiff in a pre-trial conference submitted interrogatories for defendant, some of which he refused to answer. The court ordered defendant to answer the interrogatories within 30 days. Defendant promptly applied for and obtained a writ of prohibition restraining the enforcement of the order. While we are not now prepared to say that this remedy is available, it does indicate a possibility for avoiding the harsh procedure of requiring a litigant to submit to a contempt proceeding before his rights may be determined or probably completely destroyed. For a good discussion of this subject, see 36 Minn. L. Rev. 654.

■ In view of the importance of the questions involved and the fact that there must be a new trial and the questions are apt to arise on such new trial, we will consider the questions presented on their merit even though ordinarily they would not be reviewable on this appeal. See, Christensen v. Hennepin Transp. Co. Inc. 215 Minn. 394, 10 N. W. (2d) 406, 147 A. L. R. 945.

On the record as we have it before us, can it be said that the court erred in requiring defendant to produce the conductor's report to defendant? As the record stands, it appears that in opposing the discovery motion defendant submitted no counter-affidavit or other proof to show that the report was privileged or otherwise immune from discovery. While defendant's main argument is that the report was privileged and therefore protected by Rule 34, it also apparently argues that it is immune from discovery under Rule 26.02. In considering this question it must be kept in mind that there is a distinction between the two.

The term "not privileged" as used in Rule 34 refers to privileges as that term is understood in the law of evidence. United States v. Reynolds, 345 U. S. 1, 73 S. Ct. 528, 97 L. ed. 727. In this case, therefore, we are concerned with the attorney-client privilege as

defined by M. S. A. 595.02[7] and our decisions construing the statute.

It is not always easy to apply the statute, but in so doing certain fundamental rules should be observed. 8 Wigmore, Evidence (3 ed.) § 2292, states the essential of the general principle in saying that the attorney-client privilege exists—

"(1) *Where legal advice of any kind is sought* (2) *from a professional legal adviser in his capacity as such,* (3) *the communications relating to that purpose,* (4) *made in confidence* (5) *by the client,* (6) *are at his instance permanently protected* (7) *from disclosure by himself or by the legal adviser,* (8) *except the protection be waived."*

Some other guides to a determination of whether the privilege exists may be found in the decisions. The following, among others, may be helpful. (a) The privilege extends to a communication prepared by an agent or employee whether it is transmitted directly to the attorney by the client or his agent or employee (Schmitt v. Emery, 211 Minn. 547, 2 N. W. [2d] 413), 139 A. L. R. 1242; (b) if an unprivileged document exists before there exists an attorney-client relationship the mere delivery of the document to an attorney does not create a privilege (Grant v. United States, 227 U. S. 74, 33 S. Ct. 190, 57 L. ed. 423; see, 8 Wigmore, Evidence [3 ed.] § 2307, p. 594); (c) a document which is privileged when delivered to an attorney retains whatever privilege it had in the hands of the client (Lindahl v. Supreme Court I. O. F. 100 Minn. 87, 110 N. W. 358, 8 L.R.A.[N.S.] 916); (d) documents which come into existence as confidential communications between attorney and client by reason of that relationship are privileged, and neither attorney nor client

---

[7]"Every person of sufficient understanding, including a party, may testify in any action or proceeding, civil or criminal, in court or before any person who has authority to receive evidence, except as follows:

\*    \*    \*    \*    \*

"(2) An attorney cannot, without the consent of his client, be examined as to any communication made by the client to him or his advice given thereon in the course of professional duty; nor can any employee of such attorney be examined as to such communication or advice, without the client's consent;"

may be compelled to disclose or produce them; and (e) while the statute (M. S. A. 595.02) prohibits disclosure by the attorney only, the right to refuse to divulge the privileged communication extends as well to the client or his agent as to the attorney (Schmitt v. Emery, *supra;* 8 Wigmore, Evidence [3 ed.] § 2324).

One of the essentials of a privileged communication is that it be confidential. A. L. I., Model Code of Evidence, Rule 209(d), defines confidential communication between client and lawyer as follows:

" 'confidential communication between client and lawyer' means information transmitted by a voluntary act of disclosure between a client and his lawyer in confidence and by a means which, so far as the client is aware, discloses the information to no third persons other than those reasonably necessary for the transmission of the information or the accomplishment of the purpose for which it was transmitted."

A comment on clause (d) is as follows:

"A communication means information transmitted voluntarily by any means; to be confidential it must be transmitted in confidence and in such a way that it will not, to the knowledge of the client, be disclosed to third persons to whom disclosure is not reasonably necessary to make the communication effective or to accomplish its purpose. Communication between client and lawyer includes not only a communication from client to lawyer but also a communication from lawyer to client."

■ It is not always easy to apply these principles or rules to the facts of a given case with mathematical precision. However, whether a document or communication is privileged is a question of fact. When upon a discovery motion a party litigant claims privilege, the burden rests on him to present facts establishing the privilege unless it appears from the face of the document itself that it is privileged. This rule is well stated in Robertson v. Commonwealth of Virginia, 181 Va. 520, 540, 25 S. E. (2d) 352, 360, 146 A. L. R. 966, as follows:

"Since exemption from production is the exception and not the rule, the burden is on the party claiming the privilege to show that he is entitled to it. His mere assertion that the matter is confidential and privileged will not suffice. Unless the document discloses such privilege on its face, he must show by the circumstances that it is privileged."

No showing was made in this case which would justify the court in finding that the document was privileged. When facts are presented upon which the claimed privilege rests, it then becomes necessary for the court to determine whether the privilege exists much the same as in the determination of other fact issues. On the record before us it does not appear that the court erred in finding that the report involved was not privileged.

Defendant also asserts that the report was immune from discovery under Rule 26.02. It must be kept in mind that there is a distinction between privileged communications protected from discovery under Rule 34 and those matters not necessarily privileged which are immune from discovery under Rule 26.02. When our rules were adopted, largely because of the apprehension of members of the bar, the last sentence of Rule 26.02 was added to allay the fears of the bar that the privacy of the lawyer's file could be invaded.[8] The immunity of the so-called "work product of the lawyer," which it was held could not be reached except where the court found good cause therefor in Hickman v. Taylor (3 Cir.) 153 F. (2d) 212, affirmed, 329 U. S. 495, 67 S. Ct. 385, 91 L. ed. 451, was made absolute in our rule. To that extent our rules differ from the federal rules. The distinction between privileged communications protected by Rule 34 and other papers or documents immune from discovery under Rule 26.02 may not be very important in this case because the alleged privilege here is based on the claim that the document was prepared for use of defendant's attorney in preparation for or anticipation of litigation and if that is true it would also be immune under Rule 26.02 even if not privileged under Rule 34. However, it

---

[8]See, 2 Youngquist & Blacik, Minnesota Rules Practice, p. 26.

is important to keep this distinction in mind in considering the questions here involved.

Plaintiff also claims that the report is subject to discovery because it was a report made "in the usual course of business" and therefore it is not privileged nor is it the work product of the lawyer. Here again it is confusing to loosely use a term which may well have a defined meaning in some other respect. In Palmer v. Hoffman, 318 U. S. 109, 63 S. Ct. 477, 87 L. ed. 645, 144 A. L. R. 719, the United States Supreme Court held that a report such as we have here was not made in the "regular course of business" so as to be admissible under an act similar to our uniform business records as evidence act (M. S. A. 600.02) even though made pursuant to an established routine of the company. The importance of distinguishing terms is apparent when we consider the fact that, if made in the usual course of business so as to be admissible under the evidence act, there could hardly be any claim of privilege whereas, if made pursuant to an established routine, it might still be protected under either Rule 34 or Rule 26.02 if the essentials were present to establish a privilege under Rule 34 or other immunity under Rule 26.02.

It would be best, therefore, to say here that, for all that appears from the record, the report was prepared pursuant to an established routine, and it may well be that it was used for many purposes other than that of preparing for litigation. It may have been used to keep a record of the accident experience of the employee, a traffic hazard, working conditions of equipment, or for many other purposes which we need not enumerate. It may have gone to several of defendant's departments so as to completely destroy its confidential nature. If so, it would not be privileged, nor would it be immune from discovery under Rule 26.02.

Under the showing made in this case by defendant, it was not error for the court to require production of the report. There is nothing in the record which would establish the fact that the report was either privileged under Rule 34 or immune from discovery under Rule 26.02.

We do not determine what use may be made of the report at the trial. Under Palmer v. Hoffman, *supra,* the report is not admissible under the uniform business records as evidence act. Whether it may be used upon a new trial for impeachment purposes or by defendant, as was done in Sullivan v. Minneapolis St. Ry. Co. 161 Minn. 45, 200 N. W. 922, to show that the claims of defendant were not recently fabricated will depend upon the evidence as it develops upon the trial. These questions do not involve the pre-trial production of the report under Rules 34 or 26.02.

Reversed and new trial granted.

