## VINCENT DI RE v. CENTRAL LIVESTOCK ORDER BUYING COMPANY.

91 N. W. (2d) 453.

July 3, 1958—No. 37,430.

*Harold Jordan,* for appellant.

*Eugene W. Hoppe* and *Ulvin & Christensen,* for respondent.

FRANK T. GALLAGHER, JUSTICE.

Appeal from an order denying defendant's motion for judgment notwithstanding the verdict or in the alternative for a new trial.

This action was commenced by Vincent Di Re against Central Livestock Order Buying Company. In his complaint plaintiff alleged that on September 8, 1955, defendant was indebted to him for $980 for work, labor, and services rendered pursuant to Fair Labor Standards Act of 1938, as amended (29 USCA, § 201, et seq.). The defendant in its answer alleged that it is not indebted to plaintiff in any amount. It further alleged, among other things, that it kept records of plaintiff's employment in compliance with the Fair Labor Standards Act and regulations thereunder; that according to these records plaintiff was compensated for all wages to which he was lawfully entitled; and that at or prior to the termination of plaintiff's employment part of its records were stolen by him.

This case was first tried in April 1956 and the jury returned a general verdict in favor of plaintiff. Following that verdict the court granted a new trial on the ground that the verdict was not justified by the evidence. The case was then retried in November 1956. This time two issues were submitted to the jury, which were:

(1) Did the plaintiff work overtime? The jury answered "Yes" to this question.

(2) If "Yes" how many hours? The jury answered "350" hours.

It appears from the record that plaintiff was hired as a bookkeeper for defendant. It is not disputed that his compensation was to be $250 per month and that this was to be based upon a 40-hour workweek. Plaintiff's exhibit D showed that he was never paid more than the sum of $116 for 80 hours work in a 2-week period, with one exception. Plaintiff's employment was terminated on January 8, 1955. A practice in the employment was for each employee to hand in a written weekly

time record. Defendant introduced testimony to the effect that following the termination of plaintiff's employment ·it was discovered that the plaintiff's weekly time reports for the entire 18 months that he had worked for defendant were missing but that the payroll ledger sheets, which were not missing, indicated that during the entire 18 months, with one exception, plaintiff did not work over 40 hours a week.

On the other hand plaintiff testified that each week he had placed a record of overtime worked that week on his weekly time report and this was done each Monday morning. It was his claim that he had put in 359¼ hours overtime from September 9, 1953, to January 8, 1955. He claimed further that each day he marked down the amount of overtime he had spent that day and that he kept a 14-column book with a cover on it at home and that he would record the amount of overtime in that book, sometimes each day and sometimes for 3 or 4 days at a time. This general record was allowed into evidence as plaintiff's exhibit C over the objection of the defendant that this was a private memorandum and not made in the regular course of business. Plaintiff further testified that the overtime which he put on his weekly time records conformed to the overtime on his exhibit C.

Plaintiff claimed that his immediate superior, a Mr. Fearing, discussed this overtime with him about one week after he commenced his employment. He claimed that Mr. Fearing at that time said the company could not afford to pay overtime and that their object was just to get the work out. He also claimed that subsequently he discussed the matter several times with Mr. Fearing and that each time the latter would just laugh and say that he put in a lot of overtime himself and did not get paid for it. Plaintiff's testimony was that each day he worked overtime from an hour to an hour and a half or two hours and that his additional duties consisted of going from his place of employment to the stockyards and picking up scale tickets and then walking back to the office. After getting back to the office he said that he helped post those tickets. On the other hand defendant introduced testimony to the effect that when plaintiff went down to pick up the tickets he usually left about 2:30 p. m. and was back before 5 p. m.

The testimony also revealed that following his discharge plaintiff filed a claim with the Wage and Hour Division, U. S. Department of Labor.

Pursuant to this, one of its investigators, a Mr. Vinitsky, made an investigation at the defendant's place of business and at that time it was discovered that the time cards of plaintiff were missing for the entire period that Di Re worked there. However, it was also discovered that the time slips for all of the employees for 1953 were missing.

Following the verdict, the defendant moved for judgment notwithstanding the verdict or in the alternative for a new trial. The court, before hearing the arguments on this motion, inquired as to why certain records of the Wage and Hour Division of the U. S. Department of Labor had not been introduced at the trial. The court then asked the counsel for each party to submit an affidavit regarding the availability of the government records and to consent to the issuance by the court of an order for submission of such records.

The record next indicates a letter from the attorney for the defendant to the court setting forth a proposed order excluding the production of evidence pertaining to the investigation made after the termination of plaintiff's employment. The attorney for the plaintiff then sent a letter to the court disagreeing and asking that the proposed order include all of the investigation. The court then ordered that the results and findings of the investigators, including Vinitsky's, be brought before the court. In its order the court stated that it:

"* * * SHOULD KNOW WHAT THOSE MISSING TIME SLIPS CONTAINED: IF THE MISSING TIME SLIPS SHOWED THAT THE PLAINTIFF HAD FILLED IN APPLICATION FOR OVERTIME ON THOSE TIME SLIPS, AS HE TESTIFIED IN COURT, THE VERDICT OF THE JURY SHOULD STAND AND HE SHOULD BE ENTITLED TO OVERTIME: IF THOSE MISSING TIME SLIPS CONTAINED NO APPLICATION FOR OVERTIME THE PLAINTIFF SHOULD NOT RECEIVE ANY OVERTIME AND THE VERDICT OF THE JURY SHOULD BE SET ASIDE AND A NEW TRIAL GRANTED."

Specifically the court ordered a subpoena duces tecum served upon the district investigation supervisor of the division to appear before the court with all the records, reports, and any other information pertaining to investigation and inspection of the records of the Central Livestock Order Buying Company of South St. Paul made by anyone in that department during the period from September 9, 1953, to January 8,

1955, concerning the hours of overtime by plaintiff and wages he received. The court also asked that subpoenas be issued and served upon Thomas F. O'Connell[1] and upon Archie R. Vinitsky.[2]

On January 14, 1957, representatives of the United States government appeared in response to that order and pointed out that they were forbidden to comply with the order without approval of the Secretary of Labor. Thereafter counsel for the defendant did petition the Secretary of Labor. In response to that petition the solicitor of labor issued instructions to furnish the court the original files of the two investigations made during the period from September 9, 1953, to January 8, 1955. Those files were to be furnished only to the court and not to counsel for the parties.

On February 1, 1957, a representative of the Department of Labor presented the records to the court for its perusal only. The court then presented an oral review of the record to counsel but they were not permitted to see the file. The court then stated that the records of Mr. O'Connell's investigations made March 25 to April 18, 1954, threw no light on the case. The court then read a memorandum made by Mr. Vinitsky with reference to a meeting he had on February 2, 1955, with the plaintiff. The government representative at the court's request then stated that he would send a letter explaining certain computations used by the government. That letter disclosed that investigator Vinitsky computed $172.82 in unpaid overtime to plaintiff by the Central Livestock Order Buying Company as of January 8, 1955. The letter also indicated that the government's investigator requested the company to make restitution of that amount to plaintiff but the company refused to do so. The letter also contained a complex explanation indicating how the investigator arrived at the figure of $172.85.

The court then made its order on motion of defendant for judgment notwithstanding the verdict or in the alternative for a new trial. In a preliminary statement to that order the court indicated that from the

---

[1]The investigator who made an investigation in 1954, at which time it was claimed that plaintiff's time sheets were with the rest of the time sheets.

[2]The investigator who made the investigation in January 1955 pursuant to plaintiff's claim that the company owed him overtime wages.

government records there was a showing that a statement was made by the plaintiff to the government investigator contrary to the plaintiff's testimony as to the contents of the time slips. The court then denied defendant's motion except that it ordered that a new trial would be granted unless plaintiff or his attorney in writing consented to the entry of judgment in plaintiff's favor in accordance with findings and order for judgment which were made part of the order. The court then found that plaintiff was entitled to only $143.96. It also found that plaintiff was not entitled to liquidated damages inasmuch as defendant's refusal to pay his claimed overtime was in good faith. Pursuant to that order plaintiff filed his consent, and defendant appeals from the order.

The defendant assigns as error: (1) The court's allowing into evidence plaintiff's exhibit C; (2) the court's order granting a new trial unless the plaintiff accepted the court's proposed findings.

Defendant contends that the court erred in admitting plaintiff's exhibit C. It claims that exhibit C was not admissible under either M. S. A. 600.02 or 600.05. Section 600.02 reads:

"A record of an act, condition, or event shall, in so far as relevant, be competent evidence if the custodian or other qualified witness testifies to its identity and the mode of its preparation, and if it was made in the regular course of business, at or near the time of the act, condition, or event, and if, in the opinion of the court, the sources of information, method, and time of preparation were such as to justify its admission."

Section 600.01 defines "business":[3]

"The term 'business' shall include every kind of business, profession, occupation, calling or operation of institutions, whether carried on for profit or not."

The purpose of the Uniform Business Records as Evidence Act was to make it unnecessary to call as witnesses the parties who made the entries. Brown v. St. Paul City Ry. Co. 241 Minn. 15, 62 N. W. (2d) 688, 44 A. L. R. (2d) 535, and cases cited therein.

Here we are not faced with that problem inasmuch as the person

---

[3]M. S. A. 600.01 to 600.03 is the Uniform Business Records as Evidence Act.

making the record is the one who testified as to its foundation. Therefore defendant had an opportunity to cross-examine plaintiff, who made the record, as to the authenticity and as to the truthfulness of the facts contained therein.

In the Brown case this court cited McGowan v. City of Los Angeles, 100 Cal. App. (2d) 386, 223 P. (2d) 862, 21 A. L. R. (2d) 1206, to the effect that the Uniform Business Records as Evidence Act does not make records admissible when oral testimony of the same facts would be inadmissible. But this is not the situation in the instant case. Exhibit C, compiled by plaintiff, shows the time spent by him each day as overtime. It could not be said that plaintiff could not testify as to those facts. At common law admissibility of books and records of a party constituted an exception to the hearsay rule. 5 Wigmore, Evidence (3 ed.) § 1517. Statutes were passed early in many of the states, and Wigmore points out that these statutes in the western states constituted an enlargement of what he called the "parties'—books" exception to the hearsay rule. 5 Wigmore, Evidence (3 ed.) § 1519, p. 360 (also setting forth what is now M. S. A. 600.05). Under these statutes, such as §§ 600.01 to 600.05, the account books of an illiterate laborer as well as those of a tradesman or a banker are admissible. 4 Jones, Commentaires on Evidence (2 ed.) § 1784.

In the case at bar there is testimony that plaintiff called his overtime hours to the attention of his immediate superior. He further testified that exhibit C, his record of overtime, was kept regularly and within 3 or 4 days after the claimed overtime. It is to be noted that under the Fair Labor Standards Act an employee bringing suit under § 216(b) of the act for overtime compensation, together with liquidated damages, has the burden of proving that he performed work for which he was not properly compensated. Anderson v. Mt. Clemens Pottery Co. 328 U. S. 680, 66 S. Ct. 1187, 90 L. ed. 1515; Hanzely v. Hooven Letters, Inc. 44 N. Y. S. (2d) 398.

In the instant case there was no evidence impeaching plaintiff's testimony or records. Thus the credibility of both the records is a matter for determination by the jury. In such a situation and in view of the above rules we certainly cannot hold that the court abused its discretion in admitting plaintiff's exhibit C into evidence.

■ In regard to the second issue, defendant contends that the court based its conditional order on factors improper for the court to consider. The only evidence in the record of the arrangement between plaintiff and defendant was that plaintiff was hired to work a 40-hour week. On the other hand the court awarded damages not upon a 40-hour-week basis but upon a fluctuating workweek.[4] There was no evidence in the record of such an arrangement between plaintiff and defendant. The court also recited in its order a purported statement made by plaintiff to a government investigator to the effect that plaintiff had not included overtime hours on his time slips turned into the company.

The government records on which a reference was made to the above statements were not placed in evidence, nor did the government investigator testify. As a result counsel for neither party had an opportunity to question the records or to examine the government investigator. Thus the court made findings and an order based on an independent investigation entirely outside of the record. We find no precedent allowing such action by the court.

We must therefore remand this case to the trial court for the purpose of making a determination of defendant's motion based only on the record.

---

[4]Under the fluctuating workweek the weekly salary is divided by the number of hours actually worked during the week to determine the hourly rate. The courts appear to have uniformly applied this method of computing overtime where the evidence fails to clearly establish a specific agreement between employee and employer upon a 40-hour workweek. Sikes v. Williams Lbr. Co. (E. D. La.) 123 F. Supp. 853; Overnight Motor Transp. Co. v. Missel, 316 U. S. 572, 62 S. Ct. 1216, 86 L. ed. 1682; Warren-Bradshaw Drilling Co. v. Hall (5 Cir.) 124 F. (2d) 42.