**Dr. Calvin KOBLUK, Appellant,**

v.

**UNIVERSITY OF MINNESOTA,**
**Respondent.**

**No. C4–96–1389.**

Court of Appeals of Minnesota.

Dec. 10, 1996.

Review Granted Feb. 7, 1997.

Robert J. Hennessey, Ansis V. Viksnins, Lindquist & Vennum P.L.L.P., Minneapolis, for Appellant.

Mark B. Rotenberg, University of Minnesota General Counsel, Tracy M. Smith, Associate General Counsel, Minneapolis, for Respondent.

Considered and decided by HUSPENI, P.J., TOUSSAINT, C.J., and LANSING, J.

## OPINION

LANSING, Judge.

This is an action to compel disclosure of documents under the Minnesota Government Data Practices Act, Minn.Stat. § 13.04 (1994). A former University of Minnesota faculty member sought disclosure of two documents relating to tenure denial that were exchanged between a University official and general counsel. The district court held that a memorandum drafted by the official was protected by attorney-client privilege, but that a draft of an ultimately published letter was not. We affirm that part of the summary judgment compelling disclosure of the draft letter and reverse and remand for further proceedings to determine whether attorney-client privilege attaches to the memorandum.

## FACTS

Dr. Calvin Kobluk was employed by the University of Minnesota as an assistant professor in the College of Veterinary Medicine. Kobluk applied for tenure twice, once in 1992 and again in 1993, and was denied each time. In 1992 Kobluk was presented with allegations of misconduct involving propositions made to a female student whom he was supervising. Two additional allegations were made the same year. Kobluk's second tenure application was denied in July 1994, in part because of the allegations of misconduct.

Kobluk appealed the denial of tenure through the University's internal judicial body, the Senate Judicial Committee. The committee recommended that the allegations of misconduct be removed from Kobluk's tenure file and that the decision be reviewed solely on the basis of academic and scholarly qualifications. In July 1995 Provost C. Eugene Allen was assigned by the University president to reconsider Kobluk's tenure application without regard to the allegations of misconduct.

Allen concluded that Kobluk should be denied tenure. Before notifying Kobluk of the decision, Allen, on September 5, 1995, sent a memorandum (the "September 5 memorandum") with an attached "Comments on Promotion and Tenure File for Dr. Kobluk" to Kathy Brown, associate general counsel to the University. Brown and Allen then met to discuss the tenure denial decision and letter. On September 13, 1995, Brown sent Allen a draft tenure denial letter (the "September 13 draft") substantially similar to the denial letter that Allen sent Kobluk on September 19, 1995.

Kobluk again appealed the decision to the University's Senate Judicial Committee arguing that Allen impermissibly considered the allegations of misconduct in making his decision. In preparation for his appeal, Kobluk requested the drafts of his tenure denial letter. The University initially consented to his request for drafts but later retracted its consent, arguing that the drafts were protected by attorney-client privilege. The Senate Judicial Committee denied Kobluk's attempt to compel discovery of the September 5 memorandum and the September 13 draft, and Kobluk brought this action.

The district court granted summary judgment, in part, to both parties when it ruled that the September 5 memorandum was covered by attorney-client privilege, but that the September 13 draft was not. Kobluk appealed, and the University filed a notice of review.

## ISSUE

When are drafts and documents underlying a published communication protected by attorney-client privilege?

## ANALYSIS

The Minnesota Government Data Practices Act, Minn.Stat. § 13.04, subd. 3 (1994), pro-

vides access to data stored by the University of Minnesota:

> [A]n individual who is the subject of stored private or public data on individuals shall be shown the data without any charge and, if desired, shall be informed of the content and meaning of that data.

*Id.;* Minn.Stat. § 13.02, subd. 17 (1994) (defining "state agency" to include University of Minnesota for purposes of Act).

But the Act makes an exception for data covered by an attorney-client privilege:

> Notwithstanding the provisions of this chapter, * * * the use, collection, storage, and dissemination of data by an attorney acting in a professional capacity for * * * a state agency * * * shall be governed by statutes, rules, and professional standards concerning discovery, production of documents, introduction of evidence, and professional responsibility * * *.

Minn.Stat. § 13.30 (1994). The Act does not expand or narrow the availability of attorney-client privilege but rather incorporates existing law to define the scope of the privilege. Thus, our inquiry, while taking the form of statutory interpretation, seeks in substance to clarify an evidentiary rule. The inquiry presents a question of law which we review de novo. *Meister v. Western Nat'l Mut. Ins. Co.,* 479 N.W.2d 372, 376 (Minn.1992).

Attorney-client privilege prevents disclosure of "a confidential communication made for the purpose of facilitating the rendition of professional legal services" between clients and their attorneys. Unif.R.Evid. 502(b). Because the privilege is invoked to exclude evidence and testimony, it "tends to suppress relevant facts and must be strictly construed." *Kahl v. Minnesota Wood Specialty, Inc.,* 277 N.W.2d 395, 399 (Minn.1979). Consequently, when one party claims the privilege, the burden rests with that party "to present facts establishing the privilege unless it appears from the face of the document itself that it is privileged." *Brown v. Saint Paul City Ry.,* 241 Minn. 15, 34, 62 N.W.2d 688, 701 (1954).

Generally, an attorney-client privilege [1] exists if the party asserting the privilege can show the following:

> (1) Where legal advice of any kind is sought (2) from a professional legal adviser in his capacity as such, (3) the communications relating to that purpose, (4) made in confidence (5) by the client, (6) are at his instance permanently protected (7) from disclosure by himself or by the legal adviser, (8) except the protection be waived.

*Id.* at 33, 62 N.W.2d at 700 (quoting 8 John Henry Wigmore, *Evidence* § 2292 (3d ed. 1940)).

Kobluk and the University dispute whether the University met its burden of showing that the September 5 and September 13 documents exchanged between Provost Allen and attorney Brown were (1) intended to be confidential, and (2) drafted for the purpose of seeking legal advice.

"One of the essentials of a privileged communication is that it be confidential." *Id.* at 34, 62 N.W.2d at 700. The rationale supporting attorney-client privilege—the frank disclosure of relevant information to attorneys—is upheld only if the parties intend and expect their communication to be confidential. The intent of the parties is the touchstone for determining confidentiality. *See, e.g., United States v. (Under Seal),* 748 F.2d 871, 875 (4th Cir. 1984) ("The difficult question is how to determine when a client intends or assumes that his communications will remain confidential."), *vacated on other grounds, United States v. (Under Seal),* 757 F.2d 600 (4th Cir.1985); *In re Grand Jury Proceedings,* 727 F.2d 1352, 1358 (4th Cir.1984) ("[T]he critical circumstance * * * [is] the absence of any intent that the information was to be kept confidential.").

Discerning a client's intent with respect to confidentiality is particularly difficult when communications are exchanged in preparation of a document which will ultimately be sent to a third party. Courts are split on whether such drafts and underlying docu-

---

**1.** The district court proceedings were limited to the question of whether the documents were covered by the attorney-client privilege. Our analysis does not address the scope of an attorney's work product privilege or any other statute, rule, or professional standard.

ments reflect the requisite intent of confidentiality. *Compare In re Grand Jury Proceedings,* 727 F.2d at 1355, *United States v. Lawless,* 709 F.2d 485, 487 (7th Cir.1983), *United States v. Bump,* 605 F.2d 548, 550–51 (10th Cir.1979), *United States v. Pipkins,* 528 F.2d 559, 563 (5th Cir.), *cert. denied,* 426 U.S. 952, 96 S.Ct. 3177, 49 L.Ed.2d 1191 (1976), *United States v. Cote,* 456 F.2d 142, 145 n. 3 (8th Cir.1972) (holding that information underlying a document intended for eventual publication is not covered by the privilege because it is not intended to be confidential or because confidentiality is destroyed by publication), *with Natta v. Hogan,* 392 F.2d 686, 692 (10th Cir.1968), *United States v. Willis,* 565 F.Supp. 1186, 1193 (S.D.Iowa 1983), *S.E.C. v. Texas Int'l Airlines,* 29 Fed. R.Serv.2d (CBC) 408, 410 (D.D.C.1979), *United States v. Schmidt,* 360 F.Supp. 339, 350 n. 35 (M.D.Pa.1973), and *United States v. Schlegel,* 313 F.Supp. 177, 179 (D.Neb.1970) (holding that drafts and underlying information are confidential and only the published information is not covered by the privilege), *listed in Schenet v. Anderson,* 678 F.Supp. 1280, 1282 n. 1 (E.D.Mich.1988).

In our view the question of whether earlier drafts and documents underlying a published communication are confidential or nonconfidential does not lend itself to a single categorical rule. The determination of confidentiality turns on the client's reasonable expectations and intent as evidenced by the form of the document as well as the circumstances and nature of the exchange. *United States v. Spector,* 793 F.2d 932, 938 (8th Cir.1986) (communication not intended to be disclosed to third person outside the attorney-client transaction is confidential), *cert. denied,* 479 U.S. 1031, 107 S.Ct. 876, 93 L.Ed.2d 830 (1987); *Brown,* 241 Minn. at 34, 62 N.W.2d at 701 (whether document or communication is privileged is fact question).

A determination that a document is confidential will not assure that it is protected by an attorney-client privilege. An equally important factor in determining whether the privilege attaches is the document's purpose. Only communications relating to the purpose of seeking legal advice from an attorney acting in that capacity are

protected from disclosure. *National Texture Corp. v. Hymes,* 282 N.W.2d 890, 895 (Minn. 1979); *Brown,* 241 Minn. at 33, 62 N.W.2d at 700. "[S]ince the privilege has the effect of withholding relevant information from the factfinder, it applies only where necessary to achieve its purpose. Accordingly it protects only those disclosures—necessary to obtain informed legal advice—which might not have been made absent the privilege." *Fisher v. United States,* 425 U.S. 391, 403, 96 S.Ct. 1569, 1577, 48 L.Ed.2d 39 (1976).

The party asserting the privilege must show that the communication was made for the purpose of seeking legal advice. Pre-existing documents that could have been obtained through discovery from a client prior to their delivery to an attorney clearly do not fall within the privilege. *Fisher,* 425 U.S. at 403–04, 96 S.Ct. at 1577; *Brown,* 241 Minn. at 33, 62 N.W.2d at 700. Similarly, a document which would have been created regardless of the attorney-client relationship will not become privileged upon its delivery to an attorney. *See Fisher,* 425 U.S. at 403, 96 S.Ct. at 1577 (stating the obverse proposition that the privilege protects only those communications which might not have been made in its absence).

In determining that the September 13 draft letter was not protected by the attorney-client privilege, the district court concluded that the attorney and client understood that the letter would be conveyed to others, and thus the letter did not satisfy the requirement of confidentiality. Although the determination of confidentiality is a fact-based inquiry, the form and content of a communication may conclusively demonstrate the absence of confidential intent. The September 13 draft is in the form of a letter. It was transmitted by the attorney to the client. It is addressed to Dr. Kobluk. And it is substantially similar to the letter which Kobluk ultimately received. The district court did not err in granting summary judgment. *See Murphy v. Country House, Inc.,* 307 Minn. 344, 351–52, 240 N.W.2d 507, 512 (1976) (to withstand summary judgment, nonmovant must demonstrate genuine issue

established by substantial evidence sufficient to avoid directed verdict).

The district court further concluded that the September 5 memorandum was privileged because the client and attorney did not understand that the document would be conveyed to others. But confidentiality is not determined solely by the client and attorney's stated intent. The factfinder must also consider the nature and form of the document and the circumstances of the exchange. Further, if that inquiry results in a finding of confidentiality, then the factfinder must address the purpose for creating the document. The University must demonstrate that the document was created for the purpose of seeking legal advice. We remand for further proceedings on this issue.

Because our remand could affect the district court's decision to deny Kobluk's request for attorneys' fees, we also remand that issue. *See Pathmanathan v. Saint Cloud State Univ.*, 461 N.W.2d 726, 728–29 (Minn.App.1990).

## DECISION

The district court correctly determined that the September 13 draft letter was not protected by attorney-client privilege because the evidence established that it was intended to be disclosed to a third party. But the court failed to consider all relevant factors in determining confidentiality and did not address the purpose for the creation of the September 5 memorandum in ruling that it was protected by the privilege. We affirm the district court's summary judgment compelling disclosure of the September 13 draft letter, and reverse the summary judgment denying disclosure of the September 5 memorandum, remanding for reconsideration in light of this opinion.

**Affirmed in part, reversed in part, and remanded.**