STATE of Wisconsin EX REL. Chintan V. PATEL,
Petitioner-Appellant,

v.

STATE of Wisconsin, Respondent-Respondent.

Court of Appeals

*No. 2011AP2861. Submitted on briefs July 30, 2012.
—Decided September 11, 2012.*

2012 WI App 117

(Also reported in 824 N.W.2d 862.)

On behalf of the petitioner-appellant, the cause was submitted on the briefs of *James A. Walrath* of *Law Offices* of *James A. Walrath*, LLC, of Milwaukee.

On behalf of the respondent-respondent, the cause was submitted on the brief of *J.B. Van Hollen*, attorney general, and *Sally L. Wellman*, assistant attorney general.

Before Curley, P.J., Fine and Kessler, JJ.

¶ 1. CURLEY, P.J.   Chintan V. Patel appeals the order of the trial court denying his petition for writ of *coram nobis*. Specifically, Patel argues that the trial

court erred in denying his petition for writ of *coram nobis* because his petition stated two grounds that were properly within the writ's scope: (1) he did not knowingly plead guilty to the child enticement charge, and (2) the trial court did not determine that he required an interpreter at his plea hearing. We reject Patel's arguments and affirm.

## BACKGROUND

¶ 2. Patel, who was born in India in 1989 and who immigrated to the United States when he was about nineteen years old, was charged on March 26, 2010, with one count of repeated sexual assault of a thirteen-year-old girl, contrary to WIS. STAT. § 948.025(1)(e) (2009–10)[2]; one count of child enticement, contrary to WIS. STAT. § 948.07(1); and one count of causing a child to view sexually explicit content, contrary to WIS. STAT. § 948.055. Pursuant to a plea agreement, Patel pled guilty to the child enticement charge, and the other charges were dismissed and read in at sentencing.

¶ 3. At Patel's plea hearing, the trial court used the complaint as the factual basis for the plea. The probable cause portion of the complaint provided, in pertinent part:

> I am a city of Wauwatosa law enforcement officer and I base this complaint on the statement of CRG, a 13 year old child with the date of birth of 8/26/1996. CRG states that between the above-referenced dates, at the above referenced location, [Patel] had her come into the basement . . . for the purpose of having sexual contact with her.

---

[2] All references to the Wisconsin Statutes are to the 2009–10 version unless otherwise noted.

[CRG] states that she recalls this happening on about ten different occasions between [December 15, 2009 and February 22, 2010] . . . .

CRG further states that between the above dates, while in the basement . . . at [Patel's] request, [Patel] lifted her shirt and fondled her breasts . . . . [O]n some of these occasions [Patel] also "kissed" her breasts. She states that on one occasion [Patel] put his hand down her pants and fondled her vagina.

She states that on four occasion[s] he attempted to open and pull down her pants and that he asked her to have sexual intercourse with him . . . .

[CRG] states that toward the end of the above referenced period of time [Patel's] acts became more "aggressive." She states that in addition to the sexual contact with her breasts and vagina and the proposal to have sexual intercourse, [Patel] also, while in the basement . . . masturbated his exposed penis in front of her to the point of ejaculation and tried to pull[] her over to him and tried to make her put her hand on his penis. She states that she was able to pull away but did witness the defendant's completed act of masturbation in which he attempted to cause her to participate.

¶ 4.   At the plea hearing, Patel agreed that the facts in the complaint were true and accurate. At sentencing, he provided the court with information concerning his ability to understand the English language—as his primary language was Gujarati—and his good character, including that he worked full-time at the Brussels General Store as the store manager, was responsible for all store operations managerial duties, and was well-liked by vendors and customers. Patel also provided the court with a psychological evaluation that noted that he spoke English "fairly well" and that he "voluntarily participated in the [psychological evaluation] sessions and articulated his problematic situation quite well."

¶ 5. Before accepting Patel's guilty plea, the trial court asked defense counsel if he was satisfied that Patel understood the elements of the crime and the facts supporting each element. Defense counsel assured the court that he had spent a significant amount of time "going through all of these matters and completing the guilty plea questionnaire" with Patel and was satisfied that Patel understood the elements of the offense. The trial court did not, however, determine that Patel acted with the purpose of sexually degrading or humiliating the victim, or for the purpose of sexually arousing or gratifying himself—an essential element of the offense pursuant to WIS. STAT. § 948.07(1)[3] and WIS. STAT. § 948.01(5).[4]

---

[3] WISCONSIN STAT. § 948.07(1) provides:

Whoever, with intent to commit any of the following acts, causes or attempts to cause any child who has not attained the age of 18 years to go into any vehicle, building, room or secluded place is guilty of a Class D felony:

(1) Having sexual contact or sexual intercourse with the child in violation of s. 948.02, 948.085, or 948.095.

[4] WISCONSIN STAT. § 948.01(5) provides:

"Sexual contact" means any of the following:

(a) Any of the following types of intentional touching, whether direct or through clothing, if that intentional touching is either for the purpose of sexually degrading or sexually humiliating the complainant or sexually arousing or gratifying the defendant:

1. Intentional touching by the defendant or, upon the defendant's instruction, by another person, by the use of any body part or object, of the complainant's intimate parts.

2. Intentional touching by the complainant, by the use of any body part or object, of the defendant's intimate parts or, if done upon the defendant's instructions, the intimate parts of another person.

(b) Intentional penile ejaculation of ejaculate or intentional emission of urine or feces by the defendant or, upon the defendant's

---

410

¶ 6. The plea questionnaire stated that Patel had completed "12+" years of schooling—including ESL classes at Milwaukee Area Technical College—and that he understood the English language. The questionnaire stated in the "Understandings" section that Patel understood that the crime of child enticement had "elements that the State would have to prove beyond a reasonable doubt" if he went to trial. It then listed those elements as, "[i]intent to have sexual contact (touching), with a person not yet 18 years old, caused that person to go into a secluded place." The form did not, however, describe the mental element of "sexual contact" as defined in WIS. STAT. § 948.01(5), which provides that a defendant's prohibited behaviors must be done either for the purpose of sexually degrading or humiliating the victim or for the purpose of sexually arousing or gratifying the defendant.

¶ 7. Patel was sentenced to one year in the House of Correction. His sentence was stayed, and he was placed on one year of probation. After pronouncing Patel's sentence, the trial court encouraged Patel to get further English language instruction:

> In terms of possible English as a second language[,] I know you started doing that here, and it will only help you. It cannot hurt you. It's hard, I know. The English

instruction, by another person upon any part of the body clothed or unclothed of the complainant if that ejaculation or emission is either for the purpose of sexually degrading or sexually humiliating the complainant or for the purpose of sexually arousing or gratifying the defendant.

(c) For the purpose of sexually degrading or humiliating the complainant or sexually arousing or gratifying the defendant, intentionally causing the complainant to ejaculate or emit urine or feces on any part of the defendant's body, whether clothed or unclothed.

language is very unusual. It mixes up a lot of languages and the rules aren't consistent.

The judgment of conviction required that Patel attend "school for English as a second language, if work schedule reasonably permits."

¶ 8.   A few months after he was sentenced, Patel, *pro se,* filed a motion to modify his sentence, requesting relief from the sex offender registration requirement. The trial court denied that motion, and Patel did not appeal.

¶ 9.   Patel was discharged from probation one year after his sentence began. Shortly thereafter, Patel—this time through counsel—filed a motion to withdraw his plea on the grounds that neither the pleadings, the guilty plea questionnaire, nor the plea colloquy informed Patel of an element of the offense under WIS. STAT. § 948.01(5)—that the purpose of his sexual conduct was degradation, humiliation, arousal or gratification—and that in the absence of being informed, his plea was not knowingly, voluntarily, and intelligently made. Patel's motion was dismissed because, pursuant to WIS. STAT. § 974.06, a defendant must be serving a sentence in order to pursue postconviction relief. Patel did not appeal the denial of his motion to withdraw his guilty plea.

¶ 10.   Subsequently, Patel filed a petition for writ of *coram nobis.* Patel alleged his plea and conviction were invalid because the trial court was not aware that:   (1) an essential element of the offense had not been included in the plea colloquy to assess his understanding of the charge; and (2) a determination as to Patel's language impairment and a need for an interpreter had not been made.

¶ 11.   The trial court denied Patel's petition. Patel now appeals.

## ANALYSIS

*The proper scope of the writ of coram nobis in Wisconsin.*

■

¶ 12.   In this appeal, we are asked to determine whether the trial court erred in denying Patel's petition for writ of *coram nobis*. The writ of *coram nobis* is a discretionary writ of "very limited scope" that is "addressed to the trial court." *Jessen v. State*, 95 Wis. 2d 207, 213, 290 N.W.2d 685 (1980). "The purpose of the writ is to give the trial court an opportunity to correct its own record of an error of fact not appearing on the record and which error would not have been committed by the court if the matter had been brought to the attention of the trial court." *Id.* at 213–14; see also *Ernst v. State*, 179 Wis. 646, 652, 192 N.W. 65 (1923) ("[T]he principal aim of the writ of error coram nobis [is] to afford the court in which the action was tried an opportunity to correct its own record.").

■■

¶ 13.   "A person seeking a writ of *coram nobis* must pass over two hurdles." *State v. Heimermann*, 205 Wis. 2d 376, 384, 556 N.W.2d 576 (Ct. App. 1996). First, the individual must establish that no other remedy is available. *Id.* For example, a criminal defendant seeking the writ must not be in custody because in that case WIS. STAT. § 974.06 would provide a remedy. *See Heimermann*, 205 Wis. 2d at 376. "Second, the factual error that the petitioner wishes to correct must be crucial to the ultimate judgment *and* the factual finding to which the alleged factual error is directed must not have been previously visited or 'passed on' by the trial court." *Id.* In

other words, "there must be shown the existence of an error of fact which was unknown at the time of [the plea] and which is of such a nature that knowledge of its existence at the time . . . would have prevented the entry of judgment." *See Jessen*, 95 Wis. 2d at 214. The writ does not "correct errors of law and of fact appearing on the record since such errors are traditionally corrected by appeals and writs of error." *Id.*

¶ 14. Patel urges us to view the scope of the writ of *coram nobis* more expansively. He cites *Ernst, supra; United States v. Morgan*, 346 U.S. 502 (1954); and *Skok v. State*, 760 A.2d 647 (Md. 2000), for the proposition that the writ may in fact apply to legal errors of fundamental and constitutional dimension, particularly when there are "serious collateral consequences." *See Skok*, 760 A.2d at 660–61 ("[A] convicted person who is not incarcerated and not on parole or probation, who is suddenly faced with a significant collateral consequence of his or her conviction, and who can legitimately challenge the conviction on constitutional or funda-mental grounds . . . should be able to file a motion for coram nobis relief regardless of whether the alleged infirmity in the conviction is considered an error of fact or an error of law.").

¶ 15. While Patel correctly points out that several states have adopted this broadened view, *see, e.g., id.* at 658–59 (collecting cases following the broadened scope of the writ of *coram nobis*), the standard articulated by *Jessen* and *Heimermann* leads us to conclude that Wisconsin has not done so.

¶ 16. Moreover, Patel's citation to *Ernst*, a Wis-consin case, does not persuade us that the law should be otherwise because in *Ernst*, the alleged error was pri-marily factual: "[t]he petition of plaintiff in error,

supported by affidavits, shows that the plea of guilty was entered pursuant to a mistake of fact and to an alleged fraud." *See id.*, 179 Wis. at 647. Additionally, in keeping with the standard articulated by *Jessen* and *Heimermann*, the alleged facts upon which the petitioner predicated his claim in *Ernst* were unknown to the trial court:

> [T]he plaintiff in error at the time of the filing of the information was a foreigner and not conversant with the English language, and . . . he was fraudulently induced to plead guilty, not knowing or comprehending the meaning and tenor of such plea, and . . . *the facts with reference thereto were unknown to the court and were withheld from the court.*

*See Ernst*, 179 Wis. 2d at 651 (emphasis added). Furthermore, the *Ernst* court explained that "the principal aim of the writ of error *coram nobis* [is] to afford the court in which the action was tried an opportunity to correct its own record," *see id.* at 652, and, since *Ernst* was decided nearly ninety years ago, Wisconsin courts have repeatedly reiterated the rule that the writ does not "correct errors of law and of fact appearing on the record," *see, e.g., Jessen*, 95 Wis. 2d at 214; *Heimermann*, 205 Wis. 2d at 381–84 (discussing history of writ of *coram nobis* and citing cases that explain writ's current scope).

¶ 17. Nor does the Supreme Court's decision in *Morgan* persuade us that the law in Wisconsin ought to be broadened, as it "involved a matter of federal criminal procedure" and "[is] not binding upon state courts." *See, e.g., Skok*, 760 A.2d at 658. Moreover, other jurisdictions, such as California, which follow the more limited version of the writ, *see, e.g., People v. Kim*, 202 P.3d 436, 446–47 (Cal. 4th 2009) (discussing the limited

415

nature of the writ in California), have recognized that "[t]he continuing efficacy of *Morgan*'s holding is in doubt":

> Defendant and amici curiae place much reliance on *United States v. Morgan, supra,* . . . contending it represents the modern trend of broadening the scope of *coram nobis*. The petitioner in *Morgan* was no longer in custody on a prior conviction, but sought relief on *coram nobis* (claiming he had been denied counsel) when that prior conviction was alleged as the basis of a sentence enhancement in a prosecution for a new New York State offense. The high court held *coram nobis* was an available remedy under the "all writs" section of the Judiciary Act of 1789 (28 U.S.C. § 1651), explaining the constitutional right of which the petitioner allegedly was deprived was fundamental in nature . . . .
>
> The continuing efficacy of *Morgan*'s holding is in doubt, however, for more recently the high court has reiterated the limited nature of the writ of error *coram nobis*. "[I]t was traditionally available only to bring before the court factual errors 'material to the validity and regularity of the legal proceeding itself,' such as the defendant's being under age or having died before the verdict."

*See Kim,* 202 P.3d at 454 n.16 (citations omitted; brackets in *Kim*).

¶ 18.  Finally, we note that adopting Patel's argument would require us to inappropriately broaden the law in a realm where it is already well settled. In Wisconsin, the supreme court is the law-developing or policy-making court. *State v. Schumacher,* 144 Wis. 2d 388, 407, 424 N.W.2d 672 (1988). The court of appeals, on the other hand, is charged with error correcting in individual cases. *Id.* We conclude that it would be incompatible with our error-correcting function to extend the scope of the writ of *coram nobis* in Patel's case.

¶ 19. Thus, it is with the correct standard—as articulated by *Jessen* and *Heimermann, supra*—in mind that we now turn to Patel's alleged errors to determine whether the trial court properly denied his petition for writ of *coram nobis*.

## Patel's alleged errors do not fall within the scope of the writ of coram nobis.

¶ 20. As noted, an individual seeking a writ of *coram nobis* must establish, first, that no other remedy is available, *see Heimermann*, 205 Wis. 2d at 384, and second, that there exists a factual error unknown at the time of the plea that is of such a nature that knowledge of its existence would have prevented the entry of judgment, *see Jessen*, 95 Wis. 2d at 214. While Patel, a criminal defendant no longer in custody, has cleared the first hurdle required to obtain the writ, *see Heimermann*, 205 Wis. 2d at 384, he has not cleared the second; therefore, his claim fails.

¶ 21. Patel brings two alleged errors of fact that he claims would have prevented the entry of judgment. His first alleged error is that the plea colloquy was defective in that it omitted an element of the offense, and, as a corollary to this argument, that he had no independent knowledge of the omitted element. Patel's second alleged error is that the trial court failed to recognize that his English language comprehension was limited such that he required an interpreter. We discuss each alleged error in turn.

¶ 22. Turning first to Patel's contention that the plea colloquy was defective and that he had no knowledge of an essential element of the crime to which he pled guilty, we conclude that the trial court properly denied the petition because: (1) the alleged error does

417

appear on the record; and (2) the error would not have prevented entry of the judgment. *See Jessen*, 95 Wis. 2d at 214.

¶ 23. The alleged defect in the plea colloquy is undoubtedly an error appearing on the record. *See id.* Patel pled guilty to child enticement contrary to Wis. Stat. § 948.07(1), which means that he had to admit that he had either "sexual contact" or "sexual intercourse" with the complainant. *See id.* Given that the complaint alleged "sexual contact," Patel had to further admit that he intentionally touched the complainant— or that he ejaculated in her presence—"[f]or the purpose of sexually degrading or humiliating the complainant or sexually arousing or gratifying [himself]." *See* Wis. Stat. § 948.01(5)(a)-(b). The parties do not dispute that the plea colloquy did not include the definition of sexual contact. The trial court did not determine that Patel acted with the purpose of sexually degrading or humiliating the victim, or for the purpose of sexually arousing or gratifying himself. Additionally, the plea questionnaire did not mention this particular element of the offense. While Patel tries to describe the error as unknown, the fact of the matter is that this error was easily discernible from a review of the record, which would have been available to Patel almost immediately after he pled guilty. This is the type of error to be corrected by appeal. Consequently, the trial court's decision to deny Patel's petition for writ of *coram nobis* was proper. To conclude otherwise would allow litigants to attack their convictions in piecemeal fashion. *See Kim*, 202 P.3d at 452 ("[O]ne seeking relief via *coram nobis* may not attack a final judgment in piecemeal fashion, in proceedings filed seriatim, in the hopes of finally convincing a court to issue the writ."); *cf. State v.*

*Escalona-Naranjo*, 185 Wis. 2d 168, 185, 517 N.W.2d 157 (1994) ("We need finality in our litigation.").

¶ 24.  Additionally, the alleged defect would not have prevented the entry of the judgment. As the State aptly points out, if the trial court had been told during—or even shortly after—the plea colloquy that the sexual arousal/humiliation element of "sexual contact" had been omitted from the colloquy and plea questionnaire, the court could have corrected the error immediately. Also, defense counsel could have explained the element to Patel, and could have explained how the facts in the complaint would have constituted this element. More importantly, Patel does not say in his affidavit that he would not have pled guilty had he been made aware of this particular element of the offense. This is likely so because the facts in the complaint are sufficient for a fact-finder to conclude beyond a reasonable doubt that Patel intentionally touched the complainant for one or both of the requisite sexual purposes:

> [CRG] states that toward the end of the above referenced period of time [Patel's] acts became more "aggressive." She states that in addition to the sexual contact with her breasts and vagina and the proposal to have sexual intercourse, [Patel] also, while in the basement . . . masturbated his exposed penis in front of her to the point of ejaculation and tried to pull[] her over to him and tried to make her put her hand on his penis.

¶ 25.  Turning next to Patel's contention that he required an interpreter, we conclude that the trial court properly denied the petition regarding this alleged error

because: (1) it is a legal issue; and (2) it is an error appearing on the record. *See Jessen*, 95 Wis. 2d at 214.

■

¶ 26. "Whether the trial court erred in not conducting an inquiry before trial to determine if an interpreter was necessary . . . is a question of law." *See State v. Yang*, 201 Wis. 2d 725, 731, 549 N.W.2d 769 (Ct. App. 1996).[5] Thus, the writ of *coram nobis* does not apply here. *See Jessen*, 95 Wis. 2d at 214.

¶ 27. Moreover, the alleged errors Patel points to regarding his alleged need for an interpreter are necessarily errors "of fact appearing on the record." *See id.* Patel claims in his brief that a number of factors should have put the trial court on notice that he required an interpreter, including that: Patel's first language was not English; when Patel told the trial court that he had studied English, he described it as "basic English"; Patel continued to study English as a second language even after high school; and the trial court itself advised Patel to work on his English skills, and made doing so a probation requirement. One glaring problem with Patel's argument, however, is that by arguing that the trial court should have been aware of the alleged need for an interpreter at the time of the plea hearing, he necessarily describes the error as one that would have appeared on the record. *See id.* A second problem with Patel's argument is that—while he does state in his

---

[5] *State v. Yang*, 201 Wis. 2d 725, 731, 549 N.W.2d 769 (Ct. App. 1996), addressed the issue of whether a court erred in not conducting an inquiry to determine if an interpreter was necessary as required by Wis. Stat. § 885.37(1), which refers to interpreters in municipal courts and administrative agency cases. The applicable statute in Patel's case is Wis. Stat. § 885.38, which refers to interpreters in circuit and appellate courts.

affidavit that his "English is not good" and that "[w]hen some questions were asked, I did not understand and so I did not answer right away . . . . Sometimes my lawyer talked to me when I did not answer right away"—he does not actually state that his English comprehension was so limited that he actually required an interpreter, and at no time during the proceedings did he or his counsel ever request an interpreter. Indeed, at sentencing Patel provided the court with a psychological evaluation that noted that he spoke English "fairly well" and that he "voluntarily participated in the [psychological evaluation] sessions and articulated his problematic situation quite well." Therefore, we cannot conclude that the trial court erred in denying the petition.

¶ 28.   In sum, Patel has not alleged factual errors unknown at the time of his plea that would have been of such a nature that knowledge of its existence would have prevented the entry of judgment. *See Jessen*, 95 Wis. 2d at 214. We therefore conclude that the trial court did not err in denying his petition for writ of *coram nobis*.

*By the Court.*—Order affirmed.