DUGAN, J.
*189 ¶ 1 Sammy Joseph Hadaway appeals the order denying his petition for a writ of coram nobis seeking to withdraw his plea.[1] On appeal, Hadaway contends *88 that the postconviction court (1) applied an incorrect burden of proof in evaluating his petition, and (2) erred in applying case law regarding perjury as a basis for precluding coram nobis relief in this case. We agree and, therefore, we reverse the order and remand to the postconviction court with instructions to grant the writ of coram nobis , vacate the judgment, and allow Hadaway to withdraw his guilty plea.
BACKGROUND
¶ 2 The background facts, which provide essential context for this appeal, are based on Hadaway's petition for a writ of coram nobis , which is supported with documentary evidence.[2] We refer to additional relevant facts in our discussion.
*190 ¶ 3 On August 30, 1995, police found the dead body of Jessica Payne beneath a mattress, in the backyard of a house on Milwaukee's north side. Her throat had been slashed, her bra had been torn, and her pants had been pulled down to her ankles. The evidence suggested that she had been sexually assaulted.
¶ 4 The police collected physical evidence from the crime scene, including vaginal swabs that revealed semen. The vaginal swabs were tested, but the results were inconclusive.
¶ 5 A month later, an inmate at the Milwaukee County Jail told police that Richard Gwin had implicated himself in the murder of a young white woman.[3] When police interrogated Gwin, he told them that he drove Chaunte Ott, Hadaway, and Payne to an abandoned building, where the other three got out of the car. Hadaway and Ott returned after about fifteen minutes, without Payne. Gwin said that he asked where the girl was, and Hadaway said, "she didn't have no money so [Ott] cut her throat."
*191 ¶ 6 Hadaway was a special-education student, and he has severe cognitive and intellectual disabilities. Since birth, he has had cerebral palsy and seizure disorders. Hadaway avers that he was born on December 27, 1974, and that he was seventeen years old at the time of his arrest.[4]
*89 ¶ 7 The police interrogated Hadaway over the course of several days in late October 1995. On October 24, 1995, Hadaway maintained that he "[did] not know any white girls at all" and that he had never met Payne. Hadaway consented to give hair, blood, and saliva samples.
¶ 8 On October 25, 1995, Hadaway was arrested. Hadaway provided the following information contained in this paragraph in late 2008 and early 2009, when the police conducted postconviction interviews with him. The police "regularly threatened" Hadaway that he would be raped in prison. The police played "nice cop/bad cop" and yelled at him and scared him, and told him that "he would do eighty years" if he did not implicate Ott. The police promised Hadaway that if he implicated Ott, he would serve five years in prison instead of eighty years. The police also shared the details of the murder with Hadaway, and showed him Gwin's statements. The police told Hadaway "all the things to say" and he made up a lot of information. After two days of interrogation, Hadaway gave a confession regarding Ott and his involvement with *192 Payne. Hadaway stated that when he, Payne, and Ott exited Gwin's car, they went to the rear of a house and that, after attempting to rob Payne, Ott sexually assaulted Payne and killed her.
¶ 9 The detectives who interviewed Hadaway did not take notes in their memo books; instead, they took notes during witness interviews-including their interviews of Gwin and Hadaway-on steno pads, and then destroyed the notes. Further, no record was ever made of the first one and one-half hours of the detectives' October 27, 1995 interrogation of Hadaway.
¶ 10 Ott was arrested and charged with first-degree intentional homicide. At Ott's trial, the State offered no physical evidence linking any person, including Ott, to the crime. Hadaway and Gwin both testified against Ott. Citing Hadaway and Gwin's statements to police, Hadaway states that they both repeated the story that they told police during their interrogations. A jury convicted Ott, and the court sentenced him to life in prison.
¶ 11 After Ott's trial, Hadaway pled guilty to attempted robbery.[5] In May 1996, Hadaway was sentenced to five years in prison.
¶ 12 In 2002, the Wisconsin Innocence Project, representing Ott, requested retesting of the vaginal swabs collected from Payne. The new testing excluded Hadaway, as well as Ott and Gwin, as the source of the semen found at the scene. The State crime lab developed an anonymous DNA profile; however, the anonymous profile did not match any known profile in the national DNA databank.
*193 ¶ 13 In 2007, the State discovered that the anonymous DNA profile from Payne matched the anonymous profiles from two unsolved murders that also had been committed on Milwaukee's north side. Both of those unsolved murders were committed while Ott was incarcerated.
¶ 14 In 2007, Ott filed a motion for a new trial, based on the new DNA evidence. The motion was denied and Ott appealed. On appeal, he sought relief based on additional newly discovered evidence: (1) a recantation by Hadaway who claimed that his testimony at Ott's trial was completely false and stated that he had been pressured by the police to implicate Ott; (2) statements by Hadaway's sister that he had told her numerous times that he lied at trial due to police pressure; (3) the recantation by Gwin of his trial testimony, *90 prior to his death several years after Payne's murder; and (4) statements by Gwin's sister that he had told her that police had put "severe pressure" on him during the investigation. In December 2008, this court reversed Ott's conviction, based on the DNA evidence-it did not rule on the additional newly discovered evidence.
¶ 15 In 2009, the State matched all three anonymous profiles to Walter Ellis. Citing the criminal complaint in Ellis's case, Hadaway asserts that Payne's murder shared several characteristics of Ellis's other victims: (1) Ellis raped and murdered at least eight other women, (2) Payne's body was found in the same neighborhood as the other eight victims, and (3) Ellis murdered his victims in a similar way to the way that Payne was murdered.
¶ 16 In January 2009, Ott was released from prison, and in June 2009, the State dismissed all charges against him. In April 2010, the State of Wisconsin *194 Claims Board found by "clear and convincing evidence" that Ott was innocent of the crime for which he was convicted. Ott filed a federal lawsuit against the City of Milwaukee and several police officers alleging violations of his constitutional rights. The City and the police officers settled the lawsuit. Ott received $6.5 million.
DISCUSSION
¶ 17 Our analysis of the issues Hadaway raises begins with consideration of the standard of review and the standards for a writ of coram nobis .
I. Standard of Review and Standards for a Writ of Coram Nobis
¶ 18 The writ of coram nobis "is of very limited scope" that is "addressed to the trial court." Jessen v. State , 95 Wis.2d 207, 213, 290 N.W.2d 685 (1980). The averments of the petition are to be taken as true. Ernst v. State (Ernst I ), 179 Wis. 646, 647, 651, 192 N.W. 65 (1923).
¶ 19 "We will uphold a [postconviction] court's exercise of discretion if it logically interpreted the facts, applied the proper legal standard, and used a demonstrated rational process to reach a conclusion a reasonable judge could reach." See State v. Malcom , 2001 WI App 291, ¶ 12, 249 Wis.2d 403, 638 N.W.2d 918. Whether the postconviction court applied the proper legal standard is a question of law, which we review de novo . See id.
*195 ¶ 20 Moreover, "this court can review documentary evidence, accept it as true, and then measure if the party has stated a claim as a matter of law." See State v. Heimermann , 205 Wis.2d 376, 386, 556 N.W.2d 756 (Ct. App. 1996). Thus,
even though the decision of whether to grant a writ of coram nobis is left to the discretion of the ruling trial court, we can nonetheless conduct an independent review of [a] petition and determine whether, as a matter of law, there is any legal basis for such an exercise of discretion.
See id. at 386-87, 556 N.W.2d 756.
¶ 21 In State ex rel. Patel v. State , this court summarized the standards applicable to a writ of coram nobis :
"A person seeking a writ of coram nobis must pass over two hurdles." First, the individual must establish that no other remedy is available. For example, a criminal defendant seeking the writ must not be in custody because in that case WIS. STAT. § 974.06 would provide a remedy. "Second, the factual error that the petitioner wishes to correct must be crucial to the ultimate judgment and the factual finding to which the alleged factual error is directed must not have been previously visited or *91 'passed on' by the trial court." In other words, "there must be shown the existence of an error of fact which was unknown at the time of [the plea] and which is of such a nature that knowledge of its existence at the time ... would have prevented the entry of judgment." The writ does not "correct errors of law and of fact appearing on the record since such errors are traditionally corrected by appeals and writs of error."
id="p196" href="#p196" data-label="196" data-citation-index="1" class="page-label">*196See id. , 2012 WI App 117, ¶ 13, 344 Wis.2d 405, 824 N.W.2d 862 (brackets and ellipses in Patel ; citations omitted).
¶ 22 In this case, it is undisputed that Hadaway satisfies the first requirement-he has no other remedy available. The focus of the appeal is on whether the postconviction court erred as a matter of law in its analysis of the second requirement: whether Hadaway showed the existence of an error of fact, which was unknown at the time of the plea and which is of such a nature that knowledge of its existence at the time would have prevented the entry of judgment. See id.
II. The Postconviction Court Applied an Incorrect Burden of Proof
¶ 23 Hadaway contends that the postconviction court applied an incorrect burden of proof by requiring "conclusive" proof and, instead, should have applied a preponderance of the evidence standard. The State maintains that Hadaway's characterization of the postconviction court's decision is misleading and a red herring.
A. The Burden of Proof for Coram Nobis Petitions
¶ 24 Hadaway asserts that Wisconsin courts have not adopted a burden of proof in coram nobis cases and presents two possibilities, clear and convincing evidence and the preponderance of the evidence.[6] The State has not addressed the burden of proof issue.
*197 Hadaway contends that this court should require proof by the preponderance of the evidence, relying in part on lower burdens of proof placed on persons in custody who attempt to obtain a new trial.[7] However, Hadaway also asserts no matter what the standard, he has satisfied his burden. We agree. Therefore, because as an appellate court we decide cases on *92 the narrowest possible grounds, we resolve the case on that basis. See State v. Blalock , 150 Wis.2d 688, 703, 442 N.W.2d 514 (Ct. App. 1989). *198 ¶ 25 Hadaway contends that the error of fact relating to Ellis's DNA consists of the following: (1) three identical DNA profiles were obtained from three murder victims, including Payne, who died in the same geographical area, with all of the killings indicating a possible sexual component; (2) the DNA profile was that of serial killer Ellis, who killed at least seven other women; (3) Ellis had an extensive criminal history that included solicitation and battery; (4) Ellis's DNA was found on or inside the new victims and Payne; (5) the bodies of the newly discovered victims were found in the same geographic vicinity as Payne's body; (6) Ellis's victims were either prostitutes or severe drug addicts and Payne was a runaway prostitute; (7) the newly discovered victims, like Payne, had been killed near a vacant house; (8) Ellis either strangled or cut his victims' throats; (9) Payne's 1995 killing occurred within the time frame of Ellis's seven-charged murders that occurred between 1986 and 2007; (10) Ellis committed the seven-charged murders in Milwaukee, and Payne's body was found in Milwaukee; and (11) Ellis's victims were often found on their backs and were often half or completely naked, and Payne was found on her back with her pants around her ankles. Hadaway contends that, if the trial court had known all the facts relating to Ellis's DNA and the other murder victims, the trial court would not have accepted Hadaway's guilty plea.
¶ 26 In addition, Hadaway cites the following facts as weakening his confession: (1) his recantation of his confession; (2) the police providing him with Gwin's statement, other detailed facts of the murder, and telling him what information to include in his statement; and (3) the police violating interrogation procedure, including not taking notes in their memo *199 books and, instead, taking notes on steno pads and later destroying their notes. To this, Hadaway further adds "potentially[ ]disputed facts," that (1) the police threatened Hadaway, including telling him that if he even looked at Ott at trial, he would get eighty years; and (2) he has cognitive disabilities that made him vulnerable to coercion.
¶ 27 Applying the standard in Patel to the facts of this case requires that we determine whether the alleged errors of fact were unknown at the time of Hadaway's plea and whether those facts, if known, would have prevented the trial court from accepting Hadaway's guilty plea and his subsequent conviction.
¶ 28 Under the United States Constitution, a guilty or no contest plea "must be affirmatively shown to be knowing, intelligent, and voluntary." State v. Howell , 2007 WI 75, ¶ 23, 301 Wis.2d 350, 734 N.W.2d 48 (citation omitted). At a plea colloquy, the trial court must address the defendant personally and fulfill several duties set forth in WIS. STAT. § 971.08 (1995-96)[8] and judicial mandates to ensure that a guilty or no-contest plea is constitutionally sound. Howell , 301 Wis.2d 350, ¶ 26, 734 N.W.2d 48. Those requirements include addressing the defendant personally to ascertain (1) "whether any promises, agreements, or threats were made in connection with the defendant's anticipated plea," and (2) "whether a factual basis exists to support the plea[.]" State v. Brown , 2006 WI 100, ¶ 35, 293 Wis.2d 594, 716 N.W.2d 906 (emphasis added). The *93 trial court must also "[d]etermine the extent of the defendant's education and general comprehension so *200 as to assess the defendant's capacity to understand the issues at the hearing[.]" See id.
¶ 29 We conclude that, based on the new facts regarding the presence of Ellis's DNA on Payne's body and the presence of Ellis's DNA and his involvement in the murders of seven women committed in the same vicinity that also have several other characteristics of Payne's murder, Hadaway has presented clear and convincing evidence that if known by the trial court, would have prevented it from accepting his guilty plea. We conclude that the trial court also would have questioned whether a factual basis existed for Hadaway's guilty plea if it had known that (1) Ellis's DNA was found on Payne, (2) Ellis had raped and killed several other women, and (3) there were other significant factual similarities between Payne's death and the deaths of Ellis's other victims.
¶ 30 Since the first forensic use of DNA evidence in 1986 to catch a rapist and murderer, "DNA testing's 'unparalleled ability both to exonerate the wrongly convicted and to identify the guilty' " has been recognized by law enforcement, defense counsel, and courts. See Maryland v. King , 569 U.S. 435, 442, 133 S.Ct. 1958, 186 L.Ed.2d 1 (2013) (citation omitted); see also State v. Denny , 2017 WI 17, ¶ 72, 373 Wis.2d 390, 891 N.W.2d 144. Ellis's DNA found on Payne was deemed by the Wisconsin Crime Compensation Board to be "clear and convincing evidence" to establish that Ott did not commit the crime. Indeed, neither Hadaway's DNA nor that of Gwin or Ott was found on Payne's body, and there was no physical evidence linking Hadaway with the crime.
¶ 31 Had the trial court known all the new facts related to Ellis and the presence of his DNA on Payne's body, it would have seriously and reasonably doubted *201 whether there was a factual basis for Hadaway's plea. This new evidence establishes at least a reasonable probability that Hadaway was not guilty. The new facts would have prevented the trial court from accepting his plea. This new evidence also meets the higher burden of proving by clear and convincing evidence " 'the existence of an error of fact which was unknown at the time of [the plea] and which is of such a nature that knowledge of its existence at the time ... would have prevented the entry of judgment .' " See Patel , 344 Wis.2d 405, ¶ 13, 824 N.W.2d 862 (brackets and ellipses in Patel ; emphasis added; citations omitted).[9]
B. The Postconviction Court's Decision Required Conclusive Proof
¶ 32 We note that in asserting that the postconviction court applied the incorrect burden of proof, Hadaway cites the following portion of the postconviction court's decision which states that
[Hadaway's] claim of innocence of the attempted armed robbery charge is based upon the dismissal of Ott's homicide charge and, effectively, a confession *94 that he perjured himself at Ott's jury trial. The dismissal order does not establish [Hadaway's] innocence *202 of the attempted robbery because it does not conclusively establish Ott's innocence of the homicide or Walter Ellis's guilt; it represents only a decision by the State not to retry Ott for the homicide.
(Emphasis added.)
¶ 33 The State asserts that the postconviction court did not require Hadaway to meet a heightened burden of proof, and that it correctly held that the DNA evidence pertinent to overturning Ott's conviction had no effect on whether Hadaway is guilty of the crime of attempted robbery as a party to a crime. It maintains that, rather than putting an impermissible burden on Hadaway, the postconviction court appropriately recognized that the DNA evidence as to Ott would have no ultimate effect on Hadaway's judgment of conviction and, thus, the trial court required no extra proof from Hadaway, it simply concluded that his evidence would not have been dispositive. The State further maintains that
The [postconviction] court's use of the term "conclusively establish" spoke to how Ott's release based upon DNA evidence related to Ott's and Ellis's guilt. The [postconviction] court did not say that the new DNA evidence had to "conclusively establish" Hadaway's innocence. What the court was really saying is that the new DNA evidence, and the news of Ott's conviction being overturned, do not constitute a factual error crucial to Hadaway's conviction because they are not even "conclusive" as to Ott or the third suspect, Ellis. In other words, the new information Hadaway presents does not constitute a factual error as to Hadaway or his judgment.
*203 As we further explain, we conclude that the postconviction court's two-page order does not support the State's contention.
¶ 34 We begin by noting the postconviction court stated that "[t]he State's analysis goes right to the heart of the matter, and the court adopts it[.]" In its response to Hadaway's petition, the State quoted the following holding from Ernst v. State ( Ernst II ):
The writ of coram nobis does not reach a question of perjury by a witness on a trial. The direct or implied finding by the jury or court when the case is tried that the testimony of such witness was true is conclusive upon the hearing of a petition for a writ of coram nobis . Were it otherwise, since no statutes of limitations, except perhaps such as equity may invoke, lie against the writ, no judgment would be safe against belated attacks thereon on the alleged ground of perjury.
181 Wis. 155, 159, 193 N.W. 978 (1923) (emphasis added).[10] We read the quoted passage to state that a claim of perjured testimony by a witness in an action may not be the basis for a writ of coram nobis in that action because the earlier determination by the fact finder that the testimony is credible is "conclusive."
¶ 35 The passage is not discussing the general standards or the burden of proof applicable to a petition for a writ of coram nobis . Nonetheless, that is how it was applied by the postconviction court when it stated that "[t]he dismissal order does not establish *204 the defendant's innocence of the *95 attempted robbery because it does not conclusively establish Ott's innocence of the homicide or Walter Ellis's guilt; it represents only a decision by the State not to retry Ott for the homicide." (Emphasis added.)
¶ 36 The second requirement to obtain a writ of coram nobis is to show the existence of an error of fact, which was unknown at the time of original proceeding and which is of such a nature that knowledge of its existence at the time would have prevented the entry of judgment. While this requirement does not specify the burden of proof, the requirement of "conclusive" proof is not included in the applicable case law. Thus, we conclude that the postconviction court required "conclusive proof" and, as a result, erred as a matter of law.
III. The Postconviction Court Erred in Holding that Perjury Precludes Relief
¶ 37 Hadaway contends that the postconviction court erred in applying case law regarding perjury as precluding coram nobis relief in this case. The State contends that the postconviction court properly denied the petition on that ground.
¶ 38 The postconviction court's decision states, "The defendant's claim of innocence of the attempted armed robbery charge is based upon the dismissal of Ott's homicide charge and, effectively, a confession that he perjured himself at Ott's jury trial ." (Emphasis added.) The court then stated, "a claim of perjury is not a basis upon which to grant the writ of coram nobis . See [Ernst II ], 181 Wis. 155 [193 N.W. 978] (1923)." (Italics added.) The postconviction court's decision offers no further analysis of the issue.
*205 ¶ 39 Indeed, the previously quoted passage from Ernst II holds that a writ of coram nobis "does not reach a question of perjury by a witness on a trial." Id. at 159, 193 N.W. 978. However, in Ernst II , the defendant had pled guilty to a charge of incest, and the victim had testified that the defendant had sexually assaulted her several times. See id. at 156-57, 193 N.W. 978. In seeking the writ of coram nobis , the defendant proffered the victim's affidavit stating that she testified falsely at trial. See id. at 157-58, 193 N.W. 978. Thus, the court was considering the coram nobis petition in the same case where it previously had found the victim's testimony to be truthful. As noted earlier, we read the quoted passage to state that a claim of perjured testimony by a witness in an action may not be the basis for a writ of coram nobis in that action because the earlier determination by the fact finder that the testimony is credible is "conclusive."
¶ 40 Unlike Ernst II , Hadaway's claim does not involve any perjury by anyone involved in his case. The postconviction court neither found nor does the State contend that Hadaway perjured himself during the attempted armed robbery case against him. Hadaway's claim is that he gave perjured testimony when he testified at Ott's trial. Because there has been no claim of perjury by Hadaway or anyone else involved in the proceeding against him, the postconviction court erred as a matter of law in holding that perjury in another case barred the issuance of a writ for coram nobis in this case. See Heimermann , 205 Wis.2d at 383, 556 N.W.2d 756.
CONCLUSION
¶ 41 We conclude that the postconviction court erred as a matter of law by (1) applying the incorrect *206 burden of proof to evaluate Hadaway's petition, and (2) applying case law regarding perjury as precluding coram nobis relief in this case. Furthermore, regardless of the burden of *96 proof required-clear and convincing evidence or a preponderance of the evidence-Hadaway has presented sufficient evidence to support the issuance of a writ of coram nobis . Therefore, we reverse the postconviction court's order and remand this matter to the postconviction court with instructions that it grant the writ of coram nobis , vacate the judgment, and allow Hadaway to withdraw his guilty plea.
By the Court. -Order reversed and cause remanded with directions.

The writ of coram nobis is a common law remedy, which empowers the trial court to "correct its own record of an error of fact not appearing on the record and which error would not have been committed by the court if the matter had been brought to the attention of the trial court." Jessen v. State , 95 Wis.2d 207, 212, 213-14, 290 N.W.2d 685 (1980). The writ of coram nobis is also referred to as a writ of error coram nobis . See id. at 212. Throughout this opinion, we refer to it as a writ of coram nobis . See State v. Heimermann , 205 Wis.2d 376, 379 n.1, 556 N.W.2d 756 (Ct. App. 1996).
The Honorable Diane S. Sykes, then a Milwaukee County Circuit Court Judge, presided over Hadaway's trial court proceedings. The Honorable M. Joseph Donald presided over the coram nobis proceedings. We refer to them as the trial court and the postconviction court, respectively

Hadaway's petition relies, in part, on historical facts from State v. Ott , No. 2008AP34, 2008 WL 5337081, unpublished slip op. (WI App Dec. 23, 2008). His postconviction court reply brief in support of the petition relies on facts stated in the description of the factual background in Ott v. City of Milwaukee , 682 F.3d 552, 553 (7th Cir.2012), and undisputed facts recited in the summary judgment decision in Ott v. City of Milwaukee , 48 F.Supp.3d 1197, 1200-05 (E.D. Wis. 2014). Hadaway relies on the same documents on appeal. Throughout these proceedings, the State has not objected to any factual materials relied upon by Hadaway in support of his petition, or offered any other factual materials.

Ott , 48 F.Supp.3d at 1201-02, sets forth a different version of the information obtained from the jail, and also states that Gwin was interviewed two times; originally he did not implicate Hadaway or Ott in the murder of Payne and then, when he was re-interviewed by the detectives, he stated that Hadaway told him that Ott killed Payne.

According to the birthdate Hadaway provided, he was twenty years old in October 1995. Hadaway's Milwaukee County Uniform Arrest-Detention report dated October 25, 1995, states that Hadaway's birthdate is December 24, 1974. His medical records list Hadaway's birthdate as December 27, 1974. In his opening appellate brief, Hadaway states that he was twenty-one years old when he was arrested.

Postconviction counsel informed the postconviction court that the transcripts of the plea hearing and colloquy had been destroyed.

Hadaway suggests that we adopt the preponderance of the evidence burden of proof, which he states is usually the burden of proof in most jurisdictions, although some jurisdictions require clear and convincing proof, citing Larry W. Yackle, Postconviction Remedies § 8, at 35 (1981 & 1986 Supp.), and 39 Am. Jur. 2 d Habeas Corpus § 233 (1999) ("The petitioner bears the burden of overcoming the presumption that the previous judicial proceedings were correct, by either a preponderance of the evidence or, in another jurisdiction, by clear and convincing proof.").

Hadaway argues that the preponderance of the evidence burden of proof is consistent with the burden for a person in custody to receive a new trial, citing cases that apply a reasonable probability standard. See State v. McDowell , 2004 WI 70, ¶ 54, 272 Wis.2d 488, 681 N.W.2d 500 (stating that to prove a defendant received ineffective assistance, the defendant must show a "reasonable probability" that, but for counsel's unprofessional errors, the result of the proceeding would have been different); State v. DelReal , 225 Wis.2d 565, 570-71, 593 N.W.2d 461 (Ct. App. 1999) (stating that a defendant claiming a prosecutor withheld exculpatory evidence must show a "reasonable probability" that if the exculpatory evidence had been disclosed the result of the proceeding would have been different); State v. Giacomantonio , 2016 WI App 62, ¶ 38, 371 Wis.2d 452, 885 N.W.2d 394 (stating that to support reversal based on the erroneous admission of prejudicial evidence, a defendant must show a reasonable probability that, but for the errors, the result of the proceeding would have been different.). Our supreme court has held that the reasonable probability standard is lower than the preponderance of the evidence standard. See State v. Dillard , 2014 WI 123, ¶ 103, 358 Wis.2d 543, 859 N.W.2d 44.

All references to the Wisconsin Statutes are to the 2015-16 version unless otherwise noted.

While Hadaway has established that he is entitled to coram nobis relief, based on the new facts related to Ellis and the presence of his DNA on Payne's body, we further note that the trial court's serious doubt of the factual basis for the plea would have been intensified if it had known that police had wrongfully provided Hadaway with the details of the crime and with Gwin's statements, and actually told him what information to include in his statement. Furthermore, the trial court could reasonably have also further questioned the voluntariness of the plea, if it had known that the police had threatened a vulnerable Hadaway with being imprisoned for eighty years and had preyed on his fear of prison rape.

Notwithstanding the context in which "conclusive" is used in Ernst v. State (Ernst II ), 181 Wis. 155, 159, 193 N.W. 978 (1923), the State used "conclusive" in arguing that "the presence of Mr. Ellis's DNA is not conclusive proof that Mr. Ott did not kill [Payne] and is not conclusive proof that Mr. Hadaway did not attempt to rob her." (Emphasis added.)