# COURT OF APPEALS
## DECISION
## DATED AND FILED

## March 23, 2021

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2019AP1280**

**STATE OF WISCONSIN**

Cir. Ct. No. 2005CF6364

**IN COURT OF APPEALS
DISTRICT I**

STATE OF WISCONSIN,

       PLAINTIFF-RESPONDENT,

  V.

BRIAN L. DEVROY,

       DEFENDANT-APPELLANT.

APPEAL from an order of the circuit court for Milwaukee County: MARK A. SANDERS, Judge. *Affirmed.*

Before Blanchard, Davis and White, JJ.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1    PER CURIAM.  Brian L. Devroy, *pro se*, appeals an order denying his motion seeking postconviction relief pursuant to WIS. STAT. § 974.06 (2019-20).[1]  He alleges that the circuit court erroneously rejected his claims of ineffective assistance of counsel and newly discovered evidence.  He also alleges that the circuit court erroneously permitted the State to file a late response to his postconviction motion.  We conclude that Devroy's claims of ineffective assistance of counsel are procedurally barred, he fails to satisfy the five-prong test required to obtain relief based on alleged newly discovered evidence, and the circuit court properly exercised its discretion in permitting a late filing.  Accordingly, we affirm.

**Background**

¶2    The State charged Devroy with first-degree intentional homicide in the 2005 stabbing death of his roommate.  In 2009, the case proceeded to a jury trial at which Devroy was represented by counsel.  The jury found Devroy guilty as charged.  Devroy, represented by successor counsel, pursued a postconviction motion alleging that his trial counsel was ineffective in numerous ways.  The circuit court denied relief.  He appealed and we affirmed, rejecting his claims of ineffective assistance of trial counsel and his challenge to an evidentiary ruling.  *See State v. Devroy* (*Devroy I*), No. 2011AP1704-CR, unpublished slip op. (WI App June 19, 2012).  Devroy next filed a postconviction motion *pro se* seeking postconviction discovery.  The circuit court denied the motion on August 13, 2018.  Devroy did not appeal.

---

[1] All references to the Wisconsin Statutes are to the 2019-20 version unless otherwise noted.

2

¶3    Devroy, again *pro se*, then filed the postconviction motion underlying the instant appeal. Pursuant to WIS. STAT. § 974.06, he alleged that his trial counsel was ineffective for failing to pursue certain claims, his postconviction counsel was ineffective in turn for failing to challenge trial counsel's effectiveness in regard to those claims, and that he has newly discovered evidence regarding the detective who obtained one of his custodial statements. The circuit court denied relief, and he appeals. Additional facts are discussed as warranted by our analysis.

**Discussion**

¶4    Devroy first argues that the circuit court should not have accepted the State's response to his WIS. STAT. § 974.06 motion because the State moved to extend its briefing deadline after it had lapsed. We reject this argument.

¶5    The circuit court has broad discretion to extend the time for performing an act after the deadline has passed. *See State v. Elliott*, 203 Wis. 2d 95, 106, 551 N.W.2d 850 (Ct. App 1996). We will affirm a circuit court's exercise of discretion if the decision has a reasonable basis and the circuit court reached its conclusion in accordance with accepted legal standards and the facts of record. *See State v. LaCount*, 2008 WI 59, ¶15, 310 Wis. 2d 85, 750 N.W.2d 780. We search the record for reasons to uphold a circuit court's exercise of discretion. *See State v. Thiel*, 2004 WI App 225, ¶26, 277 Wis. 2d 698, 691 N.W.2d 388. In doing so here, we keep in mind that "the law prefers, whenever reasonably possible, to afford litigants a day in court." *See Dugenske v. Dugenske*, 80 Wis. 2d 64, 68, 257 N.W.2d 865 (1977).

¶6    In this case, the State sought an extension of its briefing deadline eight days after the deadline had passed. The State thus acted promptly, a material factor in assessing whether to excuse delay. *See Laska v. Steinpreis*, 69 Wis. 2d

307, 324-25, 231 N.W.2d 196 (1975). To support the extension request, the State cited the press of other business. In considering the request, the circuit court noted the State's competing obligations and found that interests of fairness warranted granting relief. The record thus shows that the circuit court conducted an appropriate inquiry and reached a reasonable conclusion. Accordingly, we reject Devroy's claim that the circuit court erred by retroactively extending the State's briefing deadline.[2]

¶7      Devroy next contends that the circuit court erred by denying him a hearing on his claims that his trial counsel was ineffective for: (1) not objecting during the prosecutor's closing argument when the prosecutor allegedly vouched for the credibility of the State's witnesses; and (2) not raising certain arguments in support of Devroy's efforts to obtain the investigating officers' memo books. We conclude that the circuit court did not err because these claims are procedurally barred.

¶8      Although WIS. STAT. § 974.06 permits prisoners to raise postconviction claims after the time for a direct appeal has passed, the statute contains a limitation. Pursuant to § 974.06(4), a prisoner who wishes to pursue a second or subsequent postconviction motion must demonstrate a sufficient reason for failing to raise or adequately address the issues in previous postconviction

---

[2] Devroy also argues that the State's circuit court brief failed to address one of his claims, and therefore the State forfeited the right to dispute this claim on appeal. The State responds that Devroy mischaracterizes its submission and that it did in fact address Devroy's various claims. Assuming for the sake of argument that the State did not address one of Devroy's claims in the circuit court proceedings, the State is not foreclosed from responding now. "'[A]n appellate court may sustain a lower court's holding on a theory or on reasoning not presented to the lower court.'" **Bauer v. Murphy**, 191 Wis. 2d 517, 526, 530 N.W.2d 1 (Ct. App. 1995) (citation and emphasis omitted).

proceedings. *See State v. Escalona-Naranjo*, 185 Wis. 2d 168, 184-85, 517 N.W.2d 157 (1994). Here, Devroy claims that his postconviction counsel's ineffective assistance constitutes a sufficient reason for his failure to challenge trial counsel's errors in his first postconviction motion. Assuming without deciding that postconviction counsel was ineffective for failing to include Devroy's current claims in the original postconviction motion, this is insufficient to explain why Devroy failed to raise his current claims when he litigated his first *pro se* postconviction motion for postconviction discovery.

¶9 As we have explained, "[t]here is no exception to the *Escalona-Naranjo* rule for postconviction discovery motions." *See State v. Kletzien*, 2011 WI App 22, ¶2, 331 Wis. 2d 640, 794 N.W.2d 920. Accordingly, Devroy could not proceed with his current claims unless he first demonstrated a sufficient reason for failing to raise them in the postconviction motion that he filed on his own behalf seeking postconviction discovery. Devroy offered no reason, let alone a sufficient reason, for that failure. Accordingly, his allegations of trial counsel's ineffectiveness are barred, and the circuit court correctly rejected them.

¶10 Last, we consider whether the circuit court erroneously denied the claim that Devroy has newly discovered evidence warranting a new trial. Devroy's claim of newly discovered evidence is related to the theory that he pursued throughout the trial and in the postconviction litigation underlying *Devroy I*. In those proceedings, he contended that he should be permitted to introduce evidence that Detective Carl Buschmann, who obtained one of Devroy's three confessions, used high-pressure tactics in an unrelated case to obtain false evidence against Chaunte Ott, whose wrongful conviction was subsequently overturned. *See Devroy I*, No. 2011AP1704-CR, ¶3 & n.1; *see also State v. Ott*, No. 2008AP34, unpublished slip op. (WI App Dec. 23, 2008).

5

¶11 As set forth in ***Devroy I***, Ott was convicted of murdering Jessica Payne after a trial in which the State relied primarily on testimony from Sam Hadaway and Richard Gwin, both of whom gave statements implicating Ott. *See **Devroy I***, No. 2011AP1704-CR, ¶10. Some years after Ott's conviction, DNA evidence excluded all three men as the source of the DNA found on Payne's body, and the State dropped the charges against Ott when further analysis revealed that the DNA matched a different man. *See **id.*** Hadaway then confessed that he had falsely implicated Ott due to pressure from Buschmann who, according to Hadaway, provided him with the details of the murder and threatened to blame Hadaway for the murder if he did not implicate Ott. *See **id.***

¶12 At Devroy's trial, Devroy's counsel sought to cross-examine Buschmann about his role in the Payne homicide investigation, but the trial court did not permit the inquiry. On direct appeal, Devroy contended that his trial counsel was ineffective in pursuit of evidence concerning Buschmann's role in that investigation. We rejected Devroy's claim, concluding that evidence of Buschmann's involvement in the investigation constituted inadmissible other acts evidence under ***State v. Sullivan***, 216 Wis. 2d 768, 772-73, 576 N.W.2d 30 (1998). *See **Devroy I***, No. 2011AP1704-CR, ¶12. We explained that, assuming the evidence was offered for a permissible purpose and was relevant, thereby satisfying the first two steps of the ***Sullivan*** analysis, the evidence nonetheless failed to satisfy the final step because "the probative value [of the evidence] is substantially outweighed by various other factors." *See **Devroy I***, No. 2011AP1704-CR, ¶¶13-14. Specifically, we said:

> First, Buschmann's involvement in the Ott case occurred ten years prior to his involvement in Devroy's investigation. "The probative value of other-acts evidence depends partially upon its nearness in time, place, and circumstance to the alleged crime or element sought to be

> proved." ***State v. Fishnick***, 127 Wis. 2d 247, 261, 378 N.W.2d 272 (1985). That Buschmann conducted the interrogations in both the Ott case and the case at bar does not, by itself, offset the ten year gap in time between the interrogations. Further, in order for the jury to have the opportunity to draw similarities between Buschmann's interrogation methods in the Ott case and in the case at bar, the jury would have to hear from the primary witnesses in the Ott case—Hadaway and Gwin—and Buschmann himself would have to testify as to his methods. Not only would such testimony involve the witnesses' attempts at recalling events from 1995, a time when interrogations were not recorded, it would also create a trial within a trial as the defense would have to show that Hadaway was both pressured and that his statement was false. Proving that Hadaway's statement was false would require introducing proof of Ott's innocence and Ellis's guilt. Essentially, multiple aspects of the Ott case would have to be relitigated within Devroy's case, running the risk of confusing the jury. Additionally, at this point, only Hadaway would potentially be available to testify, assuming he is found, as Gwin has since died.

*Id.*, ¶14. Accordingly, we concluded that the probative value of the evidence was substantially outweighed by competing concerns, including the danger of unfair prejudice, confusion of the issues, misleading the jury, undue delay, and waste of time. *See id.*, ¶¶13-14.

¶13 Devroy now claims that he has newly discovered evidence in the form of a decision by this court in ***State v. Hadaway***, 2018 WI App 59, 384 Wis. 2d 185, 918 N.W.2d 85. There, we granted Hadaway's petition for a writ of *coram nobis* and directed the circuit court to permit Hadaway to withdraw his guilty plea to attempted robbery, a plea that arose out of allegations that he and Ott attempted to rob Payne before Ott sexually assaulted and killed her. *See id.*, ¶¶1, 8-10.

¶14 We conclude that Devroy's newly discovered evidence claim is not procedurally barred by ***Escalona-Naranjo***. We released our opinion in ***Hadaway***

on August 14, 2018, after Devroy litigated his motion for postconviction discovery, and he therefore could not have raised his newly discovered evidence claim in that earlier motion. We turn to the substance of his claim.

¶15    "The decision to grant or deny a motion for a new trial based on newly discovered evidence is committed to the circuit court's discretion." *State v. Avery*, 2013 WI 13, ¶22, 345 Wis. 2d 407, 826 N.W.2d 60. We treat such decisions with deference. *See State v. McCallum*, 208 Wis. 2d 463, 480, 561 N.W.2d 707 (1997).

¶16    A defendant seeking a new trial based on newly discovered evidence "'must prove, by clear and convincing evidence, that: (1) the evidence was discovered after conviction; (2) the defendant was not negligent in seeking evidence; (3) the evidence is material to an issue in the case; and (4) the evidence is not merely cumulative.'" *State v. Armstrong*, 2005 WI 119, ¶161, 283 Wis. 2d 639, 700 N.W.2d 98 (citation omitted). If the defendant satisfies these requirements, "'the circuit court must determine whether a reasonable probability exists that a different result would be reached in a [new] trial.'" *Id.* (citation omitted). "A reasonable probability of a different result exists if there is a reasonable probability that a jury, looking at both the old and the new evidence, would have a reasonable doubt as to the defendant's guilt." *Avery*, 345 Wis. 2d 407, ¶25. A convicted person must satisfy all five requirements to obtain relief. *See State v. Kaster*, 148 Wis. 2d 789, 801, 436 N.W.2d 891 (Ct. App. 1989).

¶17    Like the circuit court, we focus primarily on the third requirement of the newly discovered evidence test, specifically, materiality. We agree with the circuit court that Devroy's proposed new evidence is not material.

8

¶18 Devroy seeks to show a jury that it should disbelieve any confession about a homicide that he gave to Buschmann because: (1) Hadaway gave a statement to Buschmann in connection with a different homicide; (2) physical evidence subsequently refuted Hadaway's statement; and (3) Hadaway then claimed that he gave the statement because Buschmann used coercive tactics.[3] None of that information, however, is new. Devroy argued throughout his trial, his first postconviction motion, and his first appeal, that Hadaway gave a false statement to Buschmann only because Buschmann used unreasonable and coercive interrogation techniques. *See Devroy I*, No. 2011AP1704-CR, ¶¶3, 6-15. The only information that Devroy offers now that did not exist at the time of trial is the *Hadaway* decision that permitted Hadaway to withdraw his guilty plea to attempted robbery. Hadaway's victory, however, is not material to any issue in Devroy's prosecution or defense. This court's conclusion that Hadaway is entitled to withdraw his guilty plea is merely a procedural step in Hadaway's case. That step adds nothing substantive to Devroy's allegations that Buschmann used coercive tactics in questioning suspects.

¶19 Devroy appears to argue that our decision in *Hadaway* is material because it refutes our conclusion in *Devroy I* that the probative value of information about Buschmann's interrogation techniques was substantially outweighed by other considerations. Devroy reminds us that we concluded that evidence about Buschmann's investigation of Payne's homicide was unduly prejudicial and time consuming because: (1) the witnesses would be required to

---

[3] Devroy argues: "[t]his newly discovered evidence goes to the heart of the detective's credibility. What Hadaway says he experienced at the hands of [] Buschmann is also what Devroy says happened to him. Both say that [] Buschmann wrote statements that they signed after prolonged harassment."

recall events from 1995; (2) the testimony would create a trial within a trial to resolve questions about an unrelated murder; and (3) only Hadaway would be available, "assuming he is found," because Gwin has died. *See Devroy I*, No. 2011AP1704-CR, ¶14. According to Devroy, those determinations are no longer on point because the recent *Hadaway* decision shows that Hadaway can be found and that he both recalls and can testify about the events related to the Payne homicide investigation. But Devroy misunderstands our decision in *Devroy I*. As our opinion expressly states, we reached our conclusions in that case *assuming* that Hadaway could be found and that Devroy would seek to present evidence at trial about the pressure from Buschmann that Hadaway claims to have experienced. We determined, however, that this scenario would run a substantial risk of confusing the jury and wasting time. Our decision in *Hadaway* does not affect this analysis in any way.

¶20    Moreover, Devroy seeks a new trial so that he may present evidence about Buschmann's interrogation of Hadaway in the Payne investigation, but we determined in *Devroy I* that Buschmann's interrogation techniques in a 1995 murder investigation are inadmissible other-acts evidence pursuant to *Sullivan*. *See Devroy I*, No. 2011AP1704-CR, ¶¶14-15. Devroy cannot relitigate that determination by reframing his argument as a claim of newly discovered evidence. *See State v. Witkowski*, 163 Wis. 2d 985, 990, 473 N.W.2d 512 (Ct. App. 1991) (explaining that "[a] matter once litigated may not be relitigated in a subsequent postconviction proceeding no matter how artfully the defendant may rephrase the issue"). Accordingly, because the evidence of Buschmann's interrogation techniques in the Payne investigation is inadmissible under *Sullivan*, the evidence is not material to Devroy's guilt or innocence. *See State v. Vollbrecht*, 2012 WI App 90, ¶25, 344 Wis. 2d 69, 820 N.W.2d 443.

10

¶21    Devroy's failure to satisfy the third element of the test disposes of his claim.  *See Kaster*, 148 Wis. 2d at 801.  For the sake of completeness, however, we briefly address the circuit court's conclusion that, even if Devroy were to satisfy the other elements of the newly discovered evidence test, he cannot satisfy the final element because no reasonable probability exists that the jury, looking at the new evidence and the old evidence, would have reached a different verdict.  This component of the analysis presents a question of law, *see Vollbrecht*, 344 Wis. 2d 69, ¶18, and we review such questions *de novo*, *see State v. Robertson*, 2003 WI App 84, ¶24, 263 Wis. 2d 349, 661 N.W.2d 105.  We agree with the circuit court.

¶22    As we explained in *Devroy I*, Detective Scott Gastrow testified that "Devroy confessed, independent of his confession to Buschmann, that [Devroy] heard voices telling him to kill" the victim.  *See Devroy I*, No. 2011AP1704-CR, ¶19.  Gastrow then prepared a written confession that Devroy signed, admitting that he committed the homicide.  Devroy's deliberate and considered decision to sign the confession was confirmed by his initials on the document in several places where he requested changes to it.  *See id.*  An inmate, Jonathan Hogans, testified that he remembered Devroy "saying 'something along the lines of doing something to his best friend.'"  *Id.*, ¶¶4, 21.  Hogans also recalled talking to a detective about Devroy's statements.  *See id.*, ¶21.  Detective Louis Johnson then testified that he spoke to Hogans, who said "that Devroy confessed to stabbing his best friend because he was mad at him and because voices told him to do it."  *Id.*, ¶22.

¶23    Thus, the evidence against Devroy included three independent confessions, only one of which involved Buschmann.  Accordingly, we agree with the State that information about Buschmann's interrogation techniques in the

Payne investigation would at most suggest that Buschmann used pressure when Devroy gave one of several truthful confessions. As a matter of law, such evidence is not likely to lead to an acquittal. *See **Vollbrecht***, 344 Wis. 2d 69, ¶18. For all the foregoing reasons, we affirm.

*By the Court.*—Order affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5.